CHAMPION HOME BUILDERS CO., a Michigan corporation, Plaintiff,

Joseph L. Kramer and Beatrice F. Kramer, Intervenors-Plaintiffs,

v.

Etson B. JEFFRESS, Defendant.

Civ. A. No. 32106.

United States District Court, E. D. Michigan, S. D.

Jan. 11, 1973.

Freud, Markus, Slavin & Mountain, Scholl, Jenkins, Robinson & Stieg, Detroit, Mich., for plaintiff.

Robert Newman, Parr, Doherty, Polk & Sargent, Robert Block, Pomerantz, Levy, Haudek & Block, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

The case now before this court presents us with the acquisition of one corporation (Concord Mobile Homes) by another (Champion Home Builders). That acquisition was accomplished via a purchase of 100% of the Concord stock, owned by Etson B. Jeffress, in exchange for 13% of Champion's stock. Mr. Jeffress was made a director of Champion subsequent to the sale. The major shareholders, including defendant, later sold as a part of a public offering portions of their holdings, pursuant to a previous agreement, selling proportional amounts in order to maintain the status quo.

This suit is brought by Champion at the instigation of two shareholders, the Kramers, to recover the profits that de-

fendant Jeffress is alleged to have made through these activities; the claim is made under § 16(b) of the Securities Exchange Act of 1934 (prohibiting "short-swing" profit-taking) [15 U.S.C.A. § 78p(b)]. The Kramers have been declared by the court to be intervenor-plaintiffs for the reason that the other directors of the corporation were involved in the challenged transactions.

Section 16(b) of the Act [15 U.S.C.A. § 78p(b)] provides that for the purpose of preventing the unfair use of information which may have been obtained, a person such as the defendant (a director or one who is a beneficial owner of more than 10% of the securities) who sells any of the securities, the beneficial ownership of which he has acquired within a period of six months from the time of the sale, is liable to the issuer of the securities for the profits realized on the sale of such securities.

Intervenor-plaintiffs' motion for summary judgment asserts that defendant sold the stock he acquired in the exchange within six months of its acquisition, thereby violating the provisions of § 16(b), and asks that the defendant be held liable for these transactions. Defendant has filed a cross-motion for summary judgment. In open court the parties agreed that the matter of liability was before the court for decision on the depositions, affidavits and exhibits submitted to the court.

There is no question as to the date of sale of the stock by Jeffress. It was September 12, 1968. The problem in this case is determining when Jeffress acquired "beneficial ownership" of the shares sold. Was it or was it not within the six month period prescribed by the statute?

### DATE OF "BENEFICIAL OWNERSHIP"

On February 17, 1968, a "handshake" agreement to exchange stock was entered into by Jeffress and Gerald Grenier and Henry George, Treasurer and President of Champion respectively, sub-

ject only to approval of the Champion Board of Directors. A resolution regarding the exchange was adopted by the Board on February 21, 1968. The formal agreement was drawn up pursuant to the Board's direction and was executed on April 17, 1968.

Plaintiffs contend that the date of acquiring "beneficial ownership" is April 17, the date a formal detailed contract drawn up by the lawyers was executed by both parties. Defendant on the other hand contends that he acquired "beneficial ownership" on February 21, the date on which both parties were bound to exchange stock—105,000 shares of Champion for all of the shares of Concord—and the date the transaction was fully approved by the Board of Directors of Champion, the minutes of which were signed by its president. The question before the court is on which of these dates did the defendant Jeffress acquire beneficial ownership of the shares?

It appears that Section 16(b), as a result of recent cases, is being enforced against owners and directors in a less strict and mechanistic way:

"The federal judiciary within the last few years has shifted from a strict and comparatively harsh objective interpretation of the section to a much more subjective approach, an analysis less concerned with the narrow letter of the law than with the particular facts at bar—in short, an approach less automatic and mechanistic and more fact-oriented and pragmatic." L. Lowenfels, Section 16(b): A New Trend in Regulating Insider Trading, 54 Cornell L.Rev. 45 (1968).

Ferraiolo v. Newman, 259 F.2d 342 (6th Cir. 1958); Blau v. Max Factor & Co., 342 F.2d 304 (9th Cir. 1965); Abrams v. Occidental Petroleum Corp., 450 F.2d 157 (2nd Cir. 1971); Provident Securities Co. v. Foremost-McKesson, Inc., 331 F.Supp. 787 (N.D.Cal.1971). However, even a technical and strict application of the statute leads to the conclusion that "beneficial ownership" was acquired by Jeffress on February 21, 1968.

██ The date of purchase or sale under which a person acquires "beneficial ownership" of stock under § 16(b) [15 U.S.C.A. § 78p(b)] is not the date of transfer of the stock but the date on which the parties are irrevocably bound. Newmark v. RKO, 425 F.2d 348 (2nd Cir. 1970); Booth v. Varian Associates, 334 F.2d 1 (1st Cir. 1964); Stella v. Graham-Paige, 232 F.2d 299 (2nd Cir. 1956) and Blau v. Ogsbury, 210 F.2d 426 (2nd Cir. 1954).

*Newmark* holds that the date of acquisition of a "conditional right to purchase . . . at a fixed price" is the date at which the purchaser became a beneficial owner. *Booth* postpones the date of "beneficial ownership" to the date at which the purchase price was fixed, holding that price is an essential part of the contract. *Stella* states beneficial ownership attaches when he "incurred an irrevocable liability to take and pay for the stock." This did not arise until the closing, for prior to that time defendant was not irrevocably bound. *Blau* holds that the exercise of an option makes one a beneficial owner. Even though payment is postponed, the defendant became irrevocably liable.

The court finds that on February 21 the parties had reached a meeting of the minds on the essentials of their exchange agreement and that if matters had thereafter bogged down in the drafting of a formal contract, either party could have sued to enforce the contract or for its breach. Since this was merely a purchase of stock by Champion, all that was needed to bind the corporation to the deal was the approval of the Board of Directors. This approval was formally given at the February 21 meeting. Jeffress, as the seller of his own stock, was similarly bound by the acceptance of his offer of sale. Under the cases the parties were thus bound and defendant Jeffress then became the "beneficial owner" and an insider.

1. The parties had reached informal agreement earlier in February to exchange 105,000 shares of Champion for all of the stock of Concord.

2. Based on this informal agreement, the Board of Directors on February 21 formally approved acquisition of Jeffress' Concord stock in exchange for 105,000 shares of Champion stock. The Board minutes read as follows:

"RESOLVED, that the proposed acquisition by Champion Home Builders Co. of all the issued and outstanding shares of the common stock, no par value ('Concord Stock'), of Concord Mobile Homes, Inc., an Indiana Corporation, from Etson B. Jeffress in exchange for 105,000 shares of the common stock, par value $1, of Champion Home Builders Co., is approved . . ."

3. Jeffress sat in on the Board meeting after approval had been given and discussed reorganization of the companies. The agreement that was discussed at this meeting was executed on April 17 and the signatures were approved by the Board on April 24.

4. The Prospectus issued for the public sale in September indicates on page 12 that "on February 21, 1968, the date on which the Board of Directors approved the acquisition of Mr. Jeffress' Concord stock [the price of Champion] was 12.44 per share, after adjustment to reflect the 100% stock distribution."

5. The proxy statement for the June stockholder meeting reported: "The acquisition of Mr. Jeffress' Concord stock in exchange for 105,000 shares of the company's $1 par value common stock was approved by the company's Board of Directors at a meeting held on February 21, 1968."

6. The Form 8–K Report to the Securities Exchange Commission for the month of April also states that the Board approved the transaction with Jeffress on February 21, 1968.

7. A public announcement of the acquisition was issued on February 21, 1968.

Not only were the parties bound by their agreement as of February 21,

1968, but Jeffress, by participation in the directors' meeting at that time, became privy to information disclosed at that meeting and the public was led to believe that Jeffress was an "insider" from that time forward.

Plaintiff contends that there was much left to be done after its approval of the exchange transaction before defendant Jeffress could become a beneficial owner of its stock. As is common in transactions of this kind "boiler plate" must be brought together. The boiler plate contract was drafted by plaintiff's attorney and signed April 17 by all parties. The letter of the attorney to the plaintiff submitting the draft contract indicates that he considered that his contribution was to put on paper the normal and ordinary terms included in contracts of this kind when he states: "This is a fairly long but typical agreement . . . [We] are not familiar with Concord's organization or operations and basically all we have done is to prepare an agreement which we think would be applicable to this kind of acquisition."

The mere fact that the transaction was a four step transaction (1. Informal negotiations for acquisition of stock; 2. Formal approval of acquisition by the parties; 3. Inclusion of all boiler plate in an agreement and plan of reorganization document to be signed by the parties; 4. The issuance of the stock) does not change the fact that under the law Jeffress became a "beneficial owner" of the stock when the company formally approved the transaction on February 21.

Defendant contends that SEC Form 3 filed by Jeffress as required by § 16(a) [15 U.S.C.A. § 78p(a)] indicates a date of April 17 as the date of acquiring the stock.

The Form 3 that was filed pursuant to SEC requirements by defendant stated he acquired the stock on April 17, 1968. But one not familiar with legal subtleties, and not thinking in terms of "beneficial ownership" would naturally tend to regard the signing of a formal agreement as the act of purchase. However, what a layman in an ordinary context regards as an act of purchase does not preclude the court from finding that beneficial ownership accrued at an earlier date.

The same can be said for all of the statements made in the course of these transactions that declare that the stock was acquired on April 17, as of February 29. The lay term of "acquisition" does not necessarily relate to a legal finding of when beneficial ownership accrued.

The record demonstrates that the action of the Champion Board of Directors on February 21, 1968 was the acceptance of an offer and the formation of a contract; this was not merely a proposal to negotiate. At this point in time the parties considered themselves bound, and were in fact bound, to a contract wherein each was to sell stock to the other. There was an offer by Jeffress on February 17, acceptance by the Board on February 21. Only the "boiler plate"—those terms that appear in every contract of this kind in approximately the same form—was left to be filled in by the formal agreement that was to be executed consistent with the decision of the Board. Purchase of stock, is effectuated by Board action alone; the Board acted on February 21, thereby binding the corporation.

Defendant was irrevocably bound to a valid contract, and thereby became the beneficial owner of 13% of the stock of Champion on February 21, 1968. This is more than six months prior to his sale of a portion of that stock on September 12. Since the transactions do not fall within the statutory period there can be no liability on defendant's part for any profit made.

■  The Statute of Frauds presents no problem in this case for the minutes of the Champion Board of Directors meeting, signed by the president, are sufficient writing to establish the terms of the contract. Defendant now seeks to

charge the signatory corporation with those terms as of that date. Since the party to be charged herein has signed the minutes, the Statute of Frauds is satisfied; the contract is valid and enforceable. M.C.L.A. § 440.8319. The Statute of Frauds is no defense in this action.

Because there is no liability under § 16(b) of the Act, the court does not reach the other issues raised by defendant here, these questions being whether Unjust Enrichment is a valid defense to an action under § 16(b) of the Securities Exchange Act of 1934, whether the courts have retreated from the strict enforcement of § 16(b), whether summary judgment is proper when it has not yet been established whether defendant actually made a profit in the challenged transactions and whether an action under § 10(b) of the Act is a proper counterclaim in such an action.

Intervenor-plaintiffs' motion for summary judgment on the issue of liability is hereby denied. Defendant's motion for summary judgment of dismissal is hereby granted.

So ordered.