**Jack H. LONDONO, Plaintiff-Appellee,**

v.

**CITY OF GAINESVILLE, a political subdivision of the State of Florida, Defendant-Appellant.**

No. 83–3749.

**Non-Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

Aug. 14, 1985.

J.T. Frankenberger, City Atty., Charles L. Hauck, Gainesville, Fla., for defendant-appellant.

Charles Carter, Richard T. Jones, Gainesville, Fla., for plaintiff-appellee.

Before TJOFLAT, HILL and ANDER-SON, Circuit Judges.

TJOFLAT, Circuit Judge:

Jack H. Londono brought this action in the district court, pursuant to 42 U.S.C. § 1983 (1982), claiming that the City of Gainesville, Florida deprived him of the effective use of his property without due process of law when it rezoned his property. After the district court granted the City's motion for summary judgment (for reasons not relevant to this appeal) but before a final judgment could be entered, Londono's lawyer advised the court that the case had been settled. The city attorney, in turn, advised the court that the case had not been settled. Instead of determining whether a settlement had mooted the parties' controversy and the case should be dismissed for want of a "case or controversy," the court decided to permit Londono to seek the specific performance of his alleged settlement agreement and treated his complaint as if it had been amended to state a claim for such relief. The court thereafter convened a hearing on the settlement issue. It concluded that the parties had reached a settlement agreement and enjoined the City to perform its obligations thereunder. The City appeals, asking us to find as a matter of law that there was no settlement and to instruct the district court to enter final judgment in accordance with its order granting the City's motion for summary judgment.

The district court's dispositive injunctive order is ambiguous in several important respects; consequently, we are unable to determine whether the court erred in concluding that the parties settled their case. We therefore vacate the court's injunction and remand the case for further findings of fact and conclusions of law on this issue.

## I.

Jack H. Londono purchased one and one-half acres of land in Gainesville, Florida for $200,000 in March 1979 for the purpose of building a sixty-unit apartment complex. At that time, the parcel was zoned R-3,

which permitted the construction of forty-three units per acre. Londono submitted a site plan for the apartment complex to the City of Gainesville Plan Board. In July 1979, while the Board had Londono's site plan under consideration, the City of Gainesville declared a moratorium on real estate development in the area in which Londono's tract was located. In October 1979, the City rezoned Londono's property R-1, thereby reducing the permissible density of multifamily development to a maximum of eight units per acre.

Londono objected to this downzoning and sued the City in state circuit court to block the change. On July 11, 1980 the circuit court concluded that the City had acted arbitrarily in rezoning Londono's property R-1 and ordered the City to zone it "consistent with present land use and zoning" within the area. The court retained jurisdiction of the case to review the City's compliance with its order.

On July 16, 1980, Londono brought this suit, alleging that the City's downzoning of his property to R-1 denied him the effective use of his property in violation of the fourteenth amendment due process clause. He sought to recover as damages the profits he would have obtained had he constructed the sixy-unit apartment complex outlined in the site plan he submitted to the City's Plan Board and the expense of litigating his claims in the state and federal courts. Following some discovery, both parties moved for summary judgment.

After these motions were argued and while the court had them under submission, Londono entered into settlement negotiations with three members of the City Commission, Commissioners Collier, Goldstein, and Junior, who also was the mayor, and they eventually agreed to the following course of action. Londono would offer to dismiss his lawsuits against the City (i.e., the state circuit court suit and the instant case), and Collier, Goldstein, and Junior would urge the City Commission to approve the City's purchase of Londono's one and one-half acre tract for $380,000. The City would pay this price by giving Londo-

no, at closing, $80,000, in cash, and a promissory note, secured by a second mortgage on the property, for $150,000, payable in two annual installments of $75,000 with interest at twelve percent per annum, and assuming the $150,000 balance Londono owed on an existing first mortgage on the property. On April 1, 1983, Londono's lawyer wrote the city attorney, offering to dismiss Londono's suits against the City if it would purchase Londono's one and one-half acre tract on the foregoing terms. He advised the city attorney that Londono's offer would be deemed withdrawn unless the City Commission unconditionally accepted it at its April 4 meeting.

At the April 4 Commission meeting, Commissioner Collier presented Londono's offer to the Commission and moved that it accept the offer "in principal" and authorize the city attorney to consult with Londono's attorney and prepare a formal agreement. Following debate, Mayor Junior, who was presiding, restated Collier's motion as calling for the city attorney to negotiate an agreement on the terms Londono's lawyer had proposed and to submit the agreement to the Commission for approval. The motion passed unanimously.

On April 5, the district court, apparently unaware of the parties' settlement negotiations and the Commission's action the preceding evening, entered a memorandum order granting the City's motion for summary judgment and directed the city attorney to prepare a final judgment. The next day Londono's attorney informed the court by telephone that the parties had settled the case on April 4. A day or so later, after he received the court's April 5 order, the city attorney telephoned the district court's chambers seeking information as to the form of the final judgment he should prepare. He spoke with a law clerk who told him that Londono's lawyer had advised the court that the case had been settled. The city attorney stated that there had been no settlement and that he would prepare a

final judgment as the court had directed. When the final judgment was submitted, the court refused to enter it. Instead, the court instructed Londono's attorney to move the court to enforce the settlement agreement the attorney contended the parties had made.

On May 26, Londono moved the court to declare that the parties had settled the case on the terms set forth in his lawyer's April 1 letter to the city attorney and to enforce that settlement. Londono contended that the letter constituted an offer and that the City, at the April 4 Commission meeting, had unconditionally accepted it. The court held an evidentiary hearing on the motion and concluded that the parties had reached a binding, enforceable settlement agreement; the Commission's action, at its April 4 meeting, amounted to an acceptance of Londono's settlement offer. The court instructed Londono's attorney to prepare findings of fact and conclusions of law to that effect and to incorporate them in a final judgment. Counsel did so, and the court signed the document counsel presented. In its judgment, the court rescinded its April 5 order granting the City's motion for summary judgment and directed the City to purchase Londono's property in accordance with the terms of his attorney's April 1 letter offer.

The City appeals.[1] It contends that the record of the April 4 Commission meeting indicates as a matter of fact and of law that the City did not enter into a binding, enforceable settlement agreement with Londono;[2] accordingly, the district court's conclusion that the parties settled the case must be set aside. The City also contends that it is entitled to judgment in accordance with the court's April 5 order granting its motion for summary judgment.

Before we address the City's contentions, we must place in proper context the district court's initial treatment of Londono's claim that the case had been settled. When Lon-

---

1. The dispositive order on appeal is a permanent injunction. We have jurisdiction to review it under 28 U.S.C. § 1292(a)(1) (1982).

2. The City has not questioned the Commission's authority to contract in its behalf in a situation such as that presented here.

dono's attorney advised the court on April 6 that the parties had settled, he stated in effect that their controversy had been mooted. *See Lamonica v. S.L.E., Inc. (In re S.L.E., Inc.)*, 674 F.2d 359, 364 (5th Cir.1982); *I.T.T. Rayonier Inc. v. United States*, 651 F.2d 343, 345 (5th Cir.1981). If counsel's statement to the court was true, and parties did not wish their settlement to be incorporated into a consent judgment or decree, the court should have dismissed the case without prejudice for want of a case or controversy, *see North Carolina v. Rice*, 404 U.S. 244, 245–46, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971), or, if the parties so stipulated, dismissed it with prejudice. *See* Fed.R.Civ.P. 41(a)(1)(ii). The truth of counsel's representation to the court, and thus the existence of a case or controversy, was placed in doubt, however, when the city attorney informed the court that the case had not been settled and that the City should be granted a summary final judgment pursuant to the court's April 5 order.

 At this juncture, the court should have proceeded to determine whether it still had a live controversy before it in the form of Londono's section 1983 civil rights action.[3] It was only in this context that the court had any authority to determine whether the parties had settled. Had they reached a settlement enforceable under Florida law, there could be no section 1983 controversy; had they not reached such a settlement, that controversy remained live. Absent an independent jurisdictional base, the court had no authority *sua sponte* to transform Londono's section 1983 claim into a suit seeking the declaration of a contract of settlement and the specific performance thereof. *See generally Fairfax Countywide Citizens Association v. County of Fairfax*, 571 F.2d 1299, 1302–03 (4th Cir.), *cert. denied*, 439 U.S. 1047, 99

S.Ct. 722, 58 L.Ed.2d 706 (1978), *contra Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371–72 (6th Cir.), *cert. denied*, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976).

In reaching this conclusion, however, we do acknowledge that the district court, in resolving this particular specie of case or controversy issue, necessarily renders a form of declaratory relief; it declares that the parties have or have not reached a meeting of the minds and made an enforceable contract. Such a declaration constitutes an adjudication that principles of res judicata and collateral estoppel would protect in a collateral proceeding.

## II.

The parties do not dispute that the district court was required to resolve the case or controversy issue they posed in a summary fashion. The court did so, entertaining all the evidence the parties contended demonstrated the existence or nonexistence of a binding, enforceable settlement. After hearing this evidence, the court ruled from the bench that the parties had reached "a meeting of the minds" and had settled their dispute, and it instructed Londono's attorney to submit a proposed final judgment, with appropriate findings of fact and conclusions of law.

 The judgment counsel submitted, and the court signed, did not deal explicitly with the two critical questions before the court: whether the City Commission, at its April 4 meeting, unconditionally accepted Londono's settlement offer, as contained in his lawyer's April 1 letter to the city attorney, and, if so, whether Londono's settlement offer and the Commission's acceptance formed an enforceable contract. We address these two questions in turn.[4]

---

**3.** The district court was obligated to question the existence of a case or controversy on its own initiative. *Liberty Mutual Insurance Co. v. Wetzel*, 424 U.S. 737, 740, 96 S.Ct. 1202, 1204, 47 L.Ed.2d 435 (1976); *In re Yarn Processing Patent Validity Litigation*, 680 F.2d 1338, 1339 (11th Cir.1982).

**4.** We reject summarily two arguments the City makes in support of its position that the parties did not enter into a contract: (1) that the contract is not enforceable under the statute of frauds, Fla.Stat.Ann. § 725.01 (West Supp.1985), because the City signed no written contract for the sale of the land; and (2) that the district court erred in refusing to consider the deposi-

## A.

■ The City Commission's action in dealing with the Londono settlement offer is a matter of record; the Commission directed the city attorney, after conferring with Londono's lawyer, to draft a settlement agreement and to submit it to the Commission for approval. The Commission's action is, arguably, open to two interpretations. The first is that the Commission unconditionally accepted Londono's offer and simply directed the city attorney to perform a ministerial act, the preparation of a formal document incorporating the terms of his offer. This interpretation does not answer the question, however, of whether a contract enforceable at law resulted. The second interpretation of the Commission's action is that the Commission did not accept Londono's offer; rather, the Commission merely directed the city attorney, after conferring with Londono's lawyer, to submit a proposed contract which it would accept or reject at a subsequent meeting.

The district court's remarks from the bench, at the conclusion of the evidentiary hearing, and its written findings and conclusions, prepared by Londono's lawyer, make no reference to the Commission's April 4 action and thus do not address these alternative interpretations thereof. As we have noted, however, the court did conclude, at the end of the hearing, that the parties had reached a "meeting of the minds" and settled their dispute; we therefore assume, for discussion purposes, that the court adopted the first interpretation, that the Commission accepted Londono's offer at its April 4 meeting. There is nothing in the record, however, suggesting that

the court determined that such acceptance created an enforceable contract. For the reasons that follow, we cannot make this determination.

## B.

Londono's attorney's April 1 letter offer failed to address many matters one would consider indispensable to the consummation of a real estate transaction. For example, it did not describe the real estate the City was to purchase, stating only that it would be Londono's "property," or indicate the kind of deed, warranty or quitclaim, Londono would give the City. If Londono and the commissioners with whom he had been negotiating contemplated that he would execute a warranty deed, his letter offer was deficient in that it failed to indicate what would occur if any title defects emerged prior to closing and whether Londono would have the right, or obligation, to cure such defects, and, if so, within what time frame. A legal description of the property to be conveyed and the answers to these questions are matters the City Commission may have wanted the city attorney to work out with Londono's attorney and explain, perhaps, why the Commission directed the city attorney to draft a contract for its consideration at a subsequent meeting.

Londono's property was encumbered by a first mortgage, given by Londono to Jim Stringfellow, but in his letter offer Londono's attorney made no representation as to the status thereof, except to say that it had a balance due and owing and that the City would "be responsible for any negotiations with Stringfellow which will be necessary."

tion testimony of several City Commissioners indicating that they did not intend to form a contract with Londono when they approved Commissioner Collier's motion at the April 4 City Commission meeting.

As for the first contention, the tape recording of the City Commission's action at the meeting satisfies the statute of frauds requirement of a signed writing. *See Champion Home Builders Co. v. Jeffress*, 352 F.Supp. 1081, 1084 (E.D. Mich.1973); *DFI Communications, Inc. v. Greenberg*, 41 N.Y.2d 602, 607–08, 363 N.E.2d 312, 315–16, 394 N.Y.S.2d 586, 590 (1977); *see gener-*

*ally* Restatement (Second) of Contracts, § 133 (1981). As for the second, the court correctly excluded the City Commissioners' deposition testimony, that they attached no legal significance to the action they took at the April 4 meeting, because their testimony consisted of uncommunicated subjective impressions that were irrelevant to the question of whether the City and Londono reached a settlement agreement. *Gendzier v. Bielecki*, 97 So.2d 604, 608 (Fla.1957); *see also* Restatement (Second) of Contracts, § 21 (1981).

The attorney added that, "[a]s far as I know the mortgage is fully assumable and no negotiations will be necessary other than advise Mr. Stringfellow of transfer of title." No one has suggested what this information was worth in the light of counsel's previous statement that the City would have to "negotiate" with Stringfellow. This may have been another matter the lawyers would have to settle before an agreement could be reached.

Finally, Londono's letter offer made no provision for a closing date or for the disposition of Londono's claims against the City, those embraced in the two pending lawsuits and any others he may have had against the City. Londono's attorney did preface his offer by saying that Commissioner Collier and Londono had "reached a tentative agreement ... suitable to both of them to resolve all pending problems between ... Londono and the City," but he nowhere defined these "pending problems" or indicated what Londono would do to solve them. They, too, are matters the Commission may have wanted the lawyers to resolve before they bound the City to purchase Londono's property for $380,000.

As we have stated, *supra*, Londono's attorney drafted the findings of fact and conclusions of law and the dispositive order the district court entered in this case. In doing so, he addressed none of the issues we have raised; he only provided that the City "shall purchase [Londono's] property in accord with the terms of [his April 1 letter offer] as adopted by the City Commission [at its April 4, 1983 meeting]." Because we are unable to discern the factual basis for the court's conclusion that the Commission's April 4 action constituted an unconditional acceptance of Londono's April 1 letter offer and the terms of the agreement the court purported specifically to enforce, we cannot pass on the validity of the injunctive order before us.[5] That order is therefore vacated and the cause is

remanded for further proceedings not inconsistent with this opinion.[6]

VACATED and REMANDED, with instructions.

trict court erred in refusing to grant the City summary judgment in accordance with its April 5, 1983 order.

---

5. See Fed.R.Civ.P. 52(a).

6. Because of our disposition of this appeal, we do not reach the City's contention that the dis-