Lorraine Frances **HAMILTON, Plaintiff,**

v.

The **SCHOOL COMMITTEE OF the CITY OF BOSTON and Laval S. Wilson,** Superintendent of the Boston Public School System, **Defendants.**

**Civ. A. No. 89–01871.**

United States District Court, D. Massachusetts.

Nov. 17, 1989.

Keith S. Halpern, Silverglate Gertner Fine & Good, Boston, Mass., for plaintiff.

John S. Stadler, Boston Public Schools, Special Asst. Corp. Counsel, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

SKINNER, District Judge.

Plaintiff, Lorraine Hamilton, filed this action to enforce an agreement between the parties that settled plaintiff's prior sex discrimination action, No. 82–3028–S (Count I of the complaint). Plaintiff also claims that defendants' alleged breach of that agreement constitutes continuing sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Count II of the complaint).

In the original action, plaintiff claimed that in 1980 defendants discriminated against her on the basis of sex, in violation of Title VII, by appointing a black man as Headmaster of Jamaica Plain High School instead of plaintiff. Plaintiff had undergone a rating and screening process required under a desegregation order from earlier race discrimination litigation against the School Committee. She alleged that she was the better qualified candidate but was denied the appointment because she was a woman.

The settlement agreement was executed in August 1987. At that time, the Title VII action was removed from the trial calendar. The settlement agreement was never filed in court, nor was I informed of its contents. The matter lay dormant until June 24, 1988, when I dismissed the case without prejudice after notification by counsel for the parties that the action had been settled. On June 28, 1988, the parties filed a stipulation purporting to dismiss the action with prejudice. This stipulation was not docketed and does not appear in the court's file of the case. Neither the agreement, the order of dismissal, nor the stipulation suggests that the court would retain jurisdiction to enforce the settlement agreement.

Under the settlement agreement, plaintiff was given the rank and salary of a headmaster. Defendants further agreed to appoint plaintiff "on a permanent basis, without going through a rating and screening process, to the first Headmaster position which becomes available and for which she expresses interest." This obligation was contingent on the parties' obtaining a federal judge's approval of defendants' waiver of the rating and screening process that normally precedes such an appointment. If judicial approval were not obtained, defendants agreed to appoint plaintiff "to the first Acting Headmaster position which becomes available and for which she expresses interest."

Plaintiff claims that defendants violated this agreement by transferring a headmaster whose school had been closed to a vacancy at the Charlestown High School instead of naming plaintiff Acting Headmaster of that school. Defendants argue that because the governing labor agreement requires them to reassign "involuntarily excessed" headmasters before making new appointments, no acting headmaster position ever became available at Charlestown High. Plaintiff responds that there is no meaningful distinction between "headmaster positions" and "acting headmaster positions." Because she expressed interest in the Charlestown vacancy, she should have been appointed to that position, albeit on an acting basis. The parties have not sought

judicial approval of a waiver, and plaintiff is not asking to be appointed "on a permanent basis."

Plaintiff moved for a preliminary injunction ordering her appointment to the Charlestown position. I asked the parties to brief the issue of subject matter jurisdiction. I have determined that this court has jurisdiction to enforce the settlement agreement and that the matter should proceed to an evidentiary hearing.

### Subject Matter Jurisdiction

The jurisdiction of a federal court is limited. "[T]he fair presumption is ... that a cause is without its jurisdiction till the contrary appears." *Turner v. Bank of North America*, 4 Dall. (4 U.S.) 7, 10, 1 L.Ed. 718, 719 (1799). The burden of establishing jurisdiction in this case is on plaintiff. *Cf. McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182–83, 56 S.Ct. 780, 782, 80 L.Ed. 1135 (1936).

*A. Inherent Jurisdiction to Enforce Settlement under Count I .*

There are two lines of authority on whether the district court has jurisdiction to enforce a settlement agreement after the underlying federal action has been dismissed. According to *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368 (6th Cir.), *cert. denied*, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976), and cases following it, the district court has "inherent" power to enforce agreements that settle federal cases. Such an agreement cannot be viewed independently of the original lawsuit. Jurisdiction is necessary to implement the federal policy in favor of settlements. Two leading cases, *Fairfax Countywide Citizens v. Fairfax County*, 571 F.2d 1299 (4th Cir.), *cert. denied*, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978), and *McCall–Bey v. Franzen*, 777 F.2d 1178 (7th Cir.1985), state that there is no inherent jurisdiction to enforce settlements. There is agreement that while a case is pending, or whenever the court retains jurisdiction for the purpose, a district court may enforce a settlement agreement as part of its ancillary jurisdiction. But the latter cases hold that once a case is finally dismissed, the party seeking enforcement must present independent grounds of federal jurisdiction over the contract dispute.

In *Aro*, the parties executed a license agreement in settlement of the plaintiff's patent infringement suit. The plaintiff subsequently moved to vacate the order of dismissal under Fed.R.Civ.P. 60(b) and for specific performance of the agreement. The trial judge reinstated the case, enjoined the defendant from breaching the agreement, and again dismissed the complaint. This procedure was approved on appeal.

In *Fairfax*, a civil rights case, the Court of Appeals for the Fourth Circuit rejected *Aro*'s holding that the district court has inherent power to enforce a settlement after vacating a dismissal order under Rule 60(b):

> We are of the opinion that the district court is *not* so empowered unless the agreement had been approved and incorporated into an order of the court, or, at the time the court is requested to enforce the agreement, there exists some independent ground upon which to base federal jurisdiction.

571 F.2d at 1303 (footnote omitted). The court distinguished the cases relied on in *Aro* as discussing the court's remedial power in actions over which it already had jurisdiction. "In our view, the inherent power of a district court to enforce settlement agreements, like any *other* power inherently vested in a federal court, presupposes the existence of federal jurisdiction over the case or controversy." *Fairfax*, 571 F.2d at 1304. The court further held that "derivative jurisdiction should be grounded on something more substantial than a mere showing that the settlement agreement would not have been entered into but for the existence of litigation pending in federal court." *Id.* at 1305. *Fairfax* disputes *Aro*'s concern that settlement would become a "trap for the unwary":

> We think that this is not so. As in the instant case where federal jurisdiction to sue for a breach of a settlement agreement does not otherwise exist, a plaintiff who claims a breach of his settlement

agreement has available two courses of action. He may take his contract claim to state court where he may seek enforcement of the settlement agreement. Because enforceability is likely to turn on questions of state law, the state court is an appropriate forum for resolving this dispute. Alternatively, the injured plaintiff may file a Rule 60(b)(6) motion in federal court, requesting that the prior dismissal order be vacated and the case restored to the court's trial docket. This restores the litigants to the *status quo ante* and allows the plaintiff to prove his case and obtain his relief on the merits of the underlying claim.

*Id.* at 1305–06 (footnote omitted).

*McCall–Bey*, 777 F.2d 1178, also involved a civil rights plaintiff. The Court of Appeals for the Seventh Circuit adopted the *Fairfax* analysis and held that a district court must explicitly retain jurisdiction in order to have authority over purely derivative enforcement claims:

No statute confers such a jurisdiction and we hesitate to use so formless a concept as inherent power to give the federal courts an indefinite jurisdiction over disputes in which the federal interest may be nonexistent. If the parties want the district judge to retain jurisdiction they had better persuade him to do so.

*McCall–Bey*, 777 F.2d at 1187. Judicial review of a settlement under *McCall–Bey* would presumably determine in advance that (1) specific enforcement of its terms would not be contrary to public policy and (2) there is a sufficient federal interest in the case to warrant federal, rather than local, enforcement after adjudication of the underlying claim is foreclosed by its dismissal.

The court in *McCall–Bey* strained to find that the district judge had intentionally, if indirectly, retained jurisdiction to enforce the settlement. The dismissal order referred to the parties' stipulation, which stated that it was made pursuant to the terms and conditions in the settlement agreement; one of those terms conferred a right to petition the district court to en-

force the agreement. The court of appeals generously read this as a request that the court retain jurisdiction. Since the district court had followed the settlement negotiations and later treated the dismissal as conditional, it had retained jurisdiction over the case. No such argument is available in this case, since I was not made aware of any agreement to seek enforcement in federal court. I dismissed the case outright.

The Eighth Circuit has agreed that something more than derivative jurisdiction is needed to permit enforcement of settlement agreements after dismissal. In *Adduono v. World Hockey Ass'n*, 824 F.2d 617, 621–22 (8th Cir.1987), the court held that Rule 11 sanctions could not be justified as a means of enforcing a settlement where the agreement was not incorporated by a judicial order and the district court did not retain jurisdiction to enforce the settlement.

The Eleventh Circuit has wavered in its approach. In *Londono v. City of Gainesville*, 768 F.2d 1223, 1227 (11th Cir.1985), a civil rights action, the court of appeals went so far as to suggest that the district court had no jurisdiction to enforce a settlement agreement even while the case was pending. The court could determine whether an agreement had been reached, thus barring recovery on the merits (which judgment would be res judicata in a collateral proceeding); but the court could not transform a civil rights case into a suit to enforce a contract. An enforceable settlement would have mooted the civil rights claim, leaving the court with no "case or controversy" within its jurisdiction. This extension of *Fairfax* was rejected by another panel of the court in *Kent v. Baker*, 815 F.2d 1395 (11th Cir.1987). *Kent*, however, is limited to the situation where enforcement of the settlement is ancillary to a pending claim within the court's jurisdiction. *See id.* at 1400 n. 4. The *Londono* dictum may still apply to cases like *Fairfax* and the one before me now.

Our court of appeals has noted the divergence of authority between the *Aro* and *Fairfax/McCall–Bey* doctrines but has yet to decide the issue:

We recognize that some courts have recently questioned a district court's ability to enforce a settlement agreement in some situations. These cases are grounded in a strict view of federal subject matter jurisdiction, the idea being that while federal courts necessarily have the power to vacate their own judgments, they do not necessarily have jurisdiction to hear collateral disputes arising under state contract law, at least not where the district court has not explicitly retained jurisdiction, or where the district court has not approved of the settlement agreement and incorporated it into an order of the court, or where there is not some independent basis for federal jurisdiction over the contract dispute. Not all courts have agreed with [that] approach, however, and some still maintain that federal courts have inherent jurisdiction to enforce settlement agreements. In this case, it is unnecessary to choose sides in this ongoing debate [because the United States is a party].

*United States v. Baus*, 834 F.2d 1114, 1127 n. 13 (1st Cir.1987) (citations omitted). *See also McClendon v. United States*, 885 F.2d 627, 632–33 (9th Cir.1989) (defendant Indian tribe's sovereign immunity made issue irrelevant); *Fox v. Consolidated Rail Corp.*, 739 F.2d 929, 932 (3d Cir.1984), *cert. denied*, 469 U.S. 1190, 105 S.Ct. 962, 83 L.Ed.2d 968 (1985).

If I adopted the Sixth Circuit doctrine strictly, I still could not entertain the separate enforcement action filed here. *Aro* permits enforcement under the prior complaint, after the dismissal has been vacated pursuant to Rule 60(b). *Hinsdale v. Farmers Nat. Bank & Trust Co.*, 823 F.2d 993 (6th Cir.1987), makes clear that the district court's inherent power derives from its active jurisdiction over the original claim; the court has no authority to enforce the agreement unless it first vacates the order of dismissal. (If the Rule 60(b) motion is granted, the court treats the matter just as it would if enforcement had been sought before dismissal.) The *Fairfax* court was certain that the *Aro* enforcement claim would have been dismissed had it been filed as a separate action. *Fairfax*, 571 F.2d at

1303. (There was no federal cause of action for breach of a patent license. *See Arvin Industries, Inc. v. Berns Air King Corp.*, 510 F.2d 1070 (7th Cir.1975).) I am unaware of any Sixth Circuit case permitting a separate enforcement action based solely on derivative jurisdiction. Plaintiff has cited no case where that procedure was followed. Rather, in jurisdictions where *Aro* is followed, it appears that if independent grounds of jurisdiction are lacking the plaintiff must at least meet the standard of Rule 60(b) for reopening the litigation.

Plaintiff relies on *Dankese v. Defense Logistics Agency*, 693 F.2d 13 (1st Cir. 1982). There our court of appeals held that the district court did not abuse its discretion in refusing to reopen prior litigation, under Rule 60(b), for the purpose of enforcing the settlement agreement. Dicta in *Dankese* stated that the district court would have inherent power to enforce the settlement agreement in the context of a separate action:

> Appellant is not left remediless. The policy of favoring settlement agreements as a means of avoiding costly and time consuming litigation would scarcely be furthered by leaving a party without recourse when the other party fails to perform according to the terms of the agreement. It is well established, therefore, that a trial court retains an inherent power to supervise and enforce settlement agreements entered into by parties to an action pending before the court.

*Dankese*, 693 F.2d at 16 (citation omitted). *Dankese* seems to reject the Rule 60(b) approach of *Aro* by indicating that a plaintiff must choose between (1) relying on the settlement and (2) avoiding it and reinstating her original claim under Rule 60(b). 693 F.2d at 15.

*Dankese* could be distinguished from this case. First, the court of appeals did not discuss the jurisdictional issue presented here. The cases cited in *Dankese* concerned the district court's summary enforcement powers, not its jurisdiction. *Aro* is not cited. Second, the court of appeals has not given the *Dankese* dictum the broad construction urged by plaintiff.

*Baus* indicates that the issue of inherent jurisdiction to enforce settlements has not been decided in this circuit. (*Baus* does not cite *Dankese*.) Third, the facts in *Dankese* appear to supply two independent bases of jurisdiction over the potential contract action: (1) a federal agency was a party; (2) the court had approved at least some aspects of the settlement (by issuing an injunction to which the defendant had agreed) and had retained jurisdiction for a time to ensure compliance. The enforcement action in *Dankese* would have satisfied the jurisdictional test of *Fairfax* and *McCall–Bey*.

Nevertheless, I think that the *Dankese* dictum is broad enough to embrace the *Aro* principle of inherent jurisdiction. *See also Mathewson Corp. v. Allied Marine Industries, Inc.*, 827 F.2d 850, 852–53 (1st Cir. 1987). *Dankese* diverges from *Hinsdale* by not requiring—in fact by discouraging—a motion under Rule 60(b).

I do not find the *Fairfax/McCall–Bey* analysis persuasive. *Fairfax* states that the mere existence of federal litigation is too insubstantial a basis for the court's authority to enforce a settlement agreement. This logic should lead to the dictum of *Londono*, which denies ancillary jurisdiction to enforce a settlement even before the case is dismissed; for it is the settlement agreement, not dismissal, that bars plaintiff's underlying, jurisdictional claim. If, contrary to *Londono*, the court may enforce the agreement before it dismisses plaintiff's moot claim, how can it lack authority to place the parties in the identical position through use of Rule 60(b)? The question appears to be one of discretion, not power.

*Fairfax* also permits the court to enforce settlements that it has approved and incorporated into a judicial order. (The court need not have approved the agreement to enforce it prior to dismissal.) This judicial approval is a discretionary act. *Fairfax* does not explain why discretion may be used to create a jurisdiction before the cause of action accrues but is unavailable later. Since enforcement will rarely be necessary, it is more economical to defer judicial scrutiny of the parties' agreement. The public policy questions that concerned the *McCall–Bey* court can be dealt with when the claim arises. Since the jurisdiction is discretionary, no court has to enforce a settlement it disapproves.

The Seventh Circuit doctrine is even more arid. *McCall–Bey* recognizes a jurisdiction to enforce settlements in pending cases. Moreover, it permits the district court to "retain" this jurisdiction without incorporating the settlement into its order of dismissal. The evidence of the judge's intent may be thin indeed, as long as it is barely discernable. This wispy procedural device evidently provides the jurisdictional substance the *Fairfax* court found lacking. Again, jurisdiction results from the anticipatory exercise of discretion but is utterly lacking if the court was not persuaded to create it in advance.

These procedural constraints on the jurisdiction are unjustified. If the enforcement action arises under federal law, it is only by virtue of its relation to the original federal lawsuit. This relation persists after the settled claim, already moot, has been formally dismissed. It exists whether or not the district court has explicitly acknowledged it. To the extent the jurisdiction is discretionary, I fail to see why its statutory or constitutional legitimacy depends on when that discretion is exercised. Express retention of jurisdiction is a useful procedural device in other contexts. It is an unnecessary, and cumbersome, adjunct to private settlement agreements. As one student has urged:

> If the courts or Congress ultimately determine that a settlement agreement must be approved by the district court or incorporated into its dismissal order for the court to have jurisdiction to subsequently enforce the agreement, then it is imperative that Rule 60(b)(6)—or some related court rule or provision—be amended to so clearly state. Where a particular procedure is necessary to invoke something so vital to a party's interest as federal subject matter jurisdiction, the requirement should be explicit.

Note, *Federal Jurisdiction to Enforce a Settlement Agreement after Vacating a Dismissal Order under Rule 60(b)(6)*, 10 Cardozo L.Rev. 2137, 2164–65 (1989).

The theory of ancillary jurisdiction is that a court must be empowered to decide an entire case. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). *Londono* failed to recognize settlement enforcement as a part of the same constitutional "case" as the underlying claim. The courts unanimously reject *Londono*, recognizing an ancillary jurisdiction over enforcement actions prior to dismissal. *Aro* is correct in stating that the settlement "cannot be viewed independently of the original suit." 531 F.2d at 1371 (quoting from the opinion below in *Aro Corp. v. Allied Witan Co.*, 65 F.R.D. 513 (N.D.Ohio 1975)). Having implicitly agreed that the enforcement action is constitutionally a part of the same case, *Fairfax* and *McCall–Bey* emphasize form over substance by restricting procedures by which the court may exercise its jurisdiction. As Judge Swygert noted in his dissent from *McCall–Bey*, judges have adequate prudential means to guard against an abuse of the jurisdiction. *See McCall–Bey*, 777 F.2d at 1199 and n. 14 (dissenting opinion). I choose not to follow the *Fairfax/McCall–Bey* doctrine. Insofar as *Aro* recognizes an inherent ancillary jurisdiction to enforce settlements, I adopt the Sixth Circuit's reasoning.

■ I must also decide whether plaintiff may bring this separate enforcement action, in accordance with the *Dankese* dictum, or whether she must proceed under Rule 60(b), pursuant to *Hinsdale*. The Sixth Circuit requires the district court to reopen the original action before it can entertain an ancillary claim. (Independent grounds of jurisdiction are required for a separate enforcement action.) The notion seems to be that a pendent claim cannot hang from a closed file. I see this as another procedural hang-up. With all respect, the Sixth Circuit misapprehends the unique character of this type of ancillary claim. By its nature, it does not arise until after the root cause of action is barred (regardless of whether it is formally still pending).

Most types of ancillary claims must be filed while the root claim is pending, because otherwise they are untimely. The rationale for the jurisdiction—that the plaintiff is expected to try all her claims in the same judicial proceeding (*see Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138)—is absent if the claims are not adjudicated together. That rationale cannot apply to settlement enforcement actions, where the claims are necessarily asynchronous. *Londono* recognizes this and denies the jurisdiction. Every other decision acknowledges the need for an ancillary jurisdiction over settlements. The jurisprudential basis of the jurisdiction is the need to decide the whole case in the same *forum* for the sake of judicial economy and fairness to the litigants. These factors are just as important when the agreement is breached after dismissal and the enforcement claim cannot be presented naturally in the course of a pending proceeding. The need for a single forum arises from the policy favoring private settlement of litigation. *See Mathewson*, 827 F.2d at 852; *Dankese*, 693 F.2d at 16. Federal enforcement will discourage abusive settlement tactics and promote the amicable resolution of federal claims. Claimants will be reluctant to settle if to do so they must waive enforcement in the federal forum. The Seventh Circuit's alternative of persuading the judge to preserve the federal forum will either impede settlement or simply waste time.

The exercise of this ancillary jurisdiction should not depend on resurrecting the shell of an old case whose merits are beyond consideration. Such use of Rule 60(b) is disfavored in the First Circuit. *Dankese* implies that Rule 60(b) is an artificial way to enforce a settlement agreement that both parties agree bars renewal of plaintiff's underlying claim.

The *Fairfax/McCall–Bey* doctrine is formalistic. It fails to explain why derivative jurisdiction should depend on the fortuity of having the original action still on the docket. As one student has noted, "procedural justifications offered for the exercise

of ancillary or derivative jurisdiction in particular situations are not as compelling as a single policy formulation which applies to all procedural contexts in which an action to enforce a settlement agreement may be brought in federal court." Note, 10 Cardozo L.Rev. at 2162 n. 128. The *Londono* approach, which would deny jurisdiction to enforce the settlement once it was determined that the pending claim had been settled, is more logical. But no one follows *Londono,* not even the Eleventh Circuit. *McCall–Bey*'s theory that jurisdiction over a potential derivative claim depends on whether the district judge expressly anticipates it is unduly grudging. In many cases, the discretionary element in the jurisdiction would be better considered at the time the claim is presented. *Hinsdale*'s strict Rule 60(b) approach is equally hollow. To my mind, any stopping point between *Londono,* which denies the jurisdiction altogether, and full discretionary power to enforce such settlements engages the courts in unproductive sophistry.

### Application of Discretionary Standard

In my opinion, jurisdiction over plaintiff's claim is warranted. Defendant's alleged breach occurred only 14 months after the discrimination suit was dismissed. The parties expected to come to federal court to seek a waiver of the rating and screening process. By all appearances, they reasonably expected their settlement agreement to be enforceable in federal court. Since the agreement resolved ongoing federal litigation, federal procedural interests are involved. *See Gamewell Mfg., Inc. v. HVAC Supply, Inc.,* 715 F.2d 112, 115 (4th Cir. 1983).

Plaintiff's enforcement claim also implicates federal policy concerns by its relationship to the underlying Title VII action. The statutory scheme encourages voluntary compliance and settlement of discrimination claims. The federal interest in the integrity of Title VII procedures argues in favor of federal jurisdiction over private agreements resolving discrimination claims. Some courts have held that district courts have jurisdiction under Title VII to enforce administrative settlements. *See, e.g., EEOC v. Safeway Stores, Inc.,* 714 F.2d 567 (5th Cir.1983), *cert. denied,* 467 U.S. 1204, 104 S.Ct. 2384, 81 L.Ed.2d 343 (1984) (conciliation agreement); *EEOC v. Liberty Trucking Co.,* 695 F.2d 1038 (7th Cir.1982) (same); *EEOC v. Henry Beck Co.,* 729 F.2d 301 (4th Cir.1984) (pre-determination settlement agreement); *Eatmon v. Bristol Steel & Iron Works, Inc.,* 769 F.2d 1503 (11th Cir.1985) (private persons may enforce settlement agreements in which defendant undertook to comply with conciliation agreement). *But see* Calleros, *Reconciling the Goals of Federalism with the Policy of Title VII: Subject–Matter Jurisdiction in Judicial Enforcement of EEOC Conciliation Agreements,* 13 Hofstra L.Rev. 257 (1984–85), for arguments against these results. Once a Title VII claim has proceeded to the district court, the argument in favor of federal enforcement of the parties' settlement is even stronger. Furthermore, it is possible that federal common law will provide the rules of decision governing the parties' agreement. *See Fulgence v. J. Ray McDermott & Co.,* 662 F.2d 1207 (5th Cir.1981) (federal common law governs Title VII settlements); *cf. Gamewell Mfg.,* 715 F.2d 112.[1]

Since the state and federal courts seem equally capable of adjudicating the contract issues at the core of this enforcement action, there is no strong countervailing reason to prefer the state forum. The federal interests in settlement procedure and in Title VII compliance, together with considerations of judicial economy, justify this court's exercise of jurisdiction over Count I of the complaint.

### B. Jurisdiction over Count II

■ Plaintiff's Title VII count does not allege that she ever filed a charge with the Equal Employment Opportunity Commission (EEOC). This is ordinarily a prerequisite to a right of action in the district court.

---

1. Plaintiff has not argued that her enforcement claim arises directly under Title VII or federal common law. Hence, I have not considered these possible independent grounds of federal question jurisdiction.

42 U.S.C. § 2000e–5(e), (f)(1). The issue here is whether the EEOC filing requirement is a jurisdictional limitation.

In *Zipes v. Trans World Airlines,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the Supreme Court held that failure to comply with the statutory time limitation on filing a charge with the EEOC is not a jurisdictional bar. Instead, the requirement of timely administrative filing is a limitations statute subject to waiver, estoppel, and equitable tolling. The Court noted that Congress had placed the jurisdictional grant and the administrative filing requirements in separate sections of Title VII.

*Zipes* concerned the timeliness of administrative procedures; it did not hold that plaintiffs could bypass administrative review altogether. Nevertheless, the conclusion drawn in *Zipes* from the structure of the statute is equally apt here. If Congress had meant EEOC proceedings to be a jurisdictional prerequisite, it would have said so. There is a difference between failure to invoke jurisdiction and failure to state a claim. I therefore hold that Count II is within this court's jurisdiction under Title VII.

Motion for Preliminary Injunction

■ To issue a mandatory injunction at this point in the proceedings would constitute summary enforcement of the parties' settlement agreement. I am not persuaded that the terms of the agreement are clear enough to warrant summary enforcement. An evidentiary hearing is required where there is a substantial dispute concerning the terms of the settlement agreement. *See, e.g., Kukla v. Nat. Distillers Products Co.,* 483 F.2d 619, 621 (6th Cir.1973), *cited in Dankese,* 693 F.2d at 16; *cf. Warner v. Rossignol,* 513 F.2d 678, 683 (1st Cir.1975) (evidentiary hearing required to determine whether defendant's dilatory conduct constituted repudiation or material breach of settlement agreement). There is a genuine issue as to what the parties' agreement required in the circumstances of this case. I should base my interpretation of the agreement on an evidentiary record.

Accordingly, the clerk shall assign a date for a scheduling conference to be held as soon as possible.