**ROLEX WATCH, U.S.A., INC., Plaintiff,**

v.

**BULOVA WATCH COMPANY, INC., Defendant.**

No. 83 C 2191.

United States District Court, E.D. New York.

April 22, 1993.

Kane, Dalsimer, Sullivan, Kurucz, Levy Eisele and Richard, New York City (David H.T. Kane, Sigrun D. Kane, and Maribel Figueredo, of counsel), for plaintiff.

Abelman, Frayne & Schwab, New York City (Jeffrey A. Schwab, Lawrence E. Abelman, Norman S. Beier, of counsel), for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiff Rolex Watch U.S.A., Inc. (Rolex) initially brought this action in 1983 alleging that defendant Bulova Watch Company, Inc. (Bulova) had copied the trade dress of Rolex watches, in violation of the Lanham Act and state law. Both parties are citizens of New York.

On November 18, 1983 the parties entered into a settlement agreement in which Bulova was permitted to sell off its existing inventory of offending watches, but would cease all sales of such watches after March 31, 1985.

On November 22, 1983 the court "so ordered" a "Stipulation and Order" which provided in full that:

> IT IS HEREBY STIPULATED AND AGREED by and between counsel for the parties, subject to the approval of this Court, that the Complaint herein be dismissed with prejudice and that the Counterclaim herein be dismissed with prejudice all without costs to either party as against the other.

The court did not review the settlement agreement, incorporate it into a consent order, nor retain jurisdiction to enforce the agreement.

Rolex now reports, some ten years later, that Bulova has deliberately breached the settlement agreement and is selling watches virtually identical to those prohibited by the agreement. Rolex moves for an order restoring the case to the court's active docket and summarily enforcing the settlement agreement.

Bulova contends solely that the court lacks subject matter jurisdiction to consider what it characterizes as a state law contract dispute over the settlement agreement.

## I

The question is whether a federal district court has the power to enforce a settlement agreement in a dismissed action where (i) the agreement was not incorporated into a court order, (ii) the court did not deliberately retain jurisdiction by either issuing an injunction or explicitly stating that jurisdiction was retained for a particular purpose, and (iii) an independent ground for subject matter jurisdiction, such as diversity of citizenship, is lacking.

### A

There are reasons suggesting that the court should exercise ancillary jurisdiction.

The court has an interest in promoting settlement of litigation before it. The adoption of a jurisdictional rule preventing the court from enforcing agreements leading to the dismissal of an action may serve to discourage settlements.

The court also has an interest in protecting the institutional integrity of the federal judicial process. There is something unseemly about a federal court absolving itself from the task of implementing the complete disposition of a case where jurisdiction is based solely on a federal question and remitting the case to a state court because one of the parties has repudiated the settlement agreement.

It seems wasteful to require a federal court to focus in every settled case on whether it wishes to retain jurisdiction when "so ordering" a dismissal. It would be more efficient to have the court decide whether to retain jurisdiction only in those few instances in which a dispute arises.

As a matter of convenience, economy, and comity, it seems unwise to adopt a rule requiring non-diverse parties to present federal claims in a federal forum but settlement disputes in a state forum. In many instances (though not here), the federal court may have become familiar with the facts and issues before the parties reached a settlement, an investment in time and effort wasted if duplicated by a state court. Moreover, because the underlying issue is governed by federal law, the state courts is called on to resolve disputes that, at bottom, implicate federal interests.

■ It is hard to see any reason in policy why dismissal of the root claim should bar jurisdiction over an ancillary matter that arises at a later time. Courts within this circuit have the power to decide attorney fee disputes after the root claim has been decided or dismissed. *See, e.g., Chesley v. Union Carbide Corp.*, 927 F.2d 60, 64–65 (2d Cir. 1991).

If a federal court has that power, logic suggests it ought to have power to enforce the outcome of litigation embodied in an agreement. The court would thereby provide an effective forum for the full resolution of disputes involving federal issues.

Article III of the Constitution authorizes federal courts to decide entire "cases" and "controversies" not merely claims. As Chief Justice John Marshall recognized, "when a question to which the judicial power of the

Union is extended by the constitution, forms an ingredient of the original cause of action, it is in the power of Congress to give the Circuit Courts jurisdiction of that cause, although other questions or fact or law may be involved in it." *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 823, 6 L.Ed. 204 (1824).

Although Congress had not in terms authorized supplemental jurisdiction when this action was filed in 1983, courts have construed the Constitution and statutes as authorizing such jurisdiction when faced with a compelling need. *See, e.g., United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). *See also* Erwin Chemerinsky, *Federal Jurisdiction* 276 (1989) ("allowing all aspects of a case to be tried in federal court preserves the attractiveness of the federal forum for litigants").

### B

Nevertheless, every Circuit Court that has examined the present issue has held that a district court lacks jurisdiction to enforce settlement agreements in these circumstances. *See, e.g., Sawka v. Healtheast, Inc.*, 989 F.2d 138, 141 (3d Cir.1993); *United Steelworkers of America v. Libby, McNeill & Libby, Inc.*, 895 F.2d 421, 423–24 (7th Cir. 1990); *Adduono v. World Hockey Ass'n*, 824 F.2d 617, 621–22 (8th Cir.1987); *Hinsdale v. Farmers National Bank & Trust Co.*, 823 F.2d 993, 995–96 (6th Cir.1987); *Londono v. Gainesville*, 768 F.2d 1223, 1227 (11th Cir. 1985); *Fairfax Countywide Citizens Ass'n v. County of Fairfax*, 571 F.2d 1299, 1303 (4th Cir.), *cert. denied*, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978). *Cf. Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371–72 (6th Cir.), *cert. denied*, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976) (enforcing settlement agreement only where court had discretion, under Fed.R.Civ.P. 60(b), to reopen litigation).

The Second Circuit has not addressed the question. But district courts within this circuit have generally not exercised jurisdiction. *See, e.g., Ryan v. Dow Chemical Co.*, 781 F.Supp. 902, 915 (E.D.N.Y.1991) (dicta, no jurisdiction in such circumstances "absent some special need of the parties"); *Musifilm,*

*B.V. v. Spector*, 568 F.Supp. 578, 580–81 (S.D.N.Y.1983) (no power to enforce settlement agreement neither approved by the court nor made part of its order).

This court knows of only one district court that exercised ancillary jurisdiction in circumstances as here. *Hamilton v. School Committee of Boston*, 725 F.Supp. 641 (D.Mass.1989).

The Circuit Courts have generally analyzed the issue in two ways. In *Aro Corporation* the Sixth Circuit reasoned that a district court has ancillary power to enforce a settlement agreement in a still-pending case, and that it could only enforce an agreement in a dismissed action if it first vacated, under Rule 60(b) of the Federal Rules of Civil Procedure, its previous order dismissing the case. In that case the parties disputed the terms of the settlement agreement several weeks after the court dismissed the action.

■ However appropriate the application of Rule 60(b) may have been there, it is inappropriate here. That rule provides, in pertinent part, that the court may relieve a party from a final judgment or order for, among other reasons, mistake, inadvertence, or "any other reason justifying relief." But the motion must be made within a "reasonable time" and for mistake or inadvertence within one year. Because the stipulation here was "so ordered" nearly ten years ago, any motion under the rule would be untimely.

■ Moreover to justify relief under the rule's language referring to "any other reason," the movant would have to show "extraordinary" circumstances where, without such relief, an extreme and unexpected hardship would occur. *See Ackermann v. United States*, 340 U.S. 193, 202, 71 S.Ct. 209, 213, 95 L.Ed. 207 (1950); *Lasky v. Continental Products Corp.*, 804 F.2d 250, 256 (3d Cir. 1986). *See also Sawka v. Healtheast, Inc.*, 989 F.2d at 140–141. Plaintiff may obtain virtually the same relief by filing a new action in state and, as will be explained below, federal court.

In *Fairfax* and cases following it, the Fourth Circuit held that even if the district

court could reopen the litigation under Rule 60(b), it would not have ancillary jurisdiction to consider a settlement agreement dispute. There, plaintiffs alleged that Fairfax County had discriminated in providing public services by failing to improve roads in predominately black neighborhoods. The state and county entered into settlement agreements to upgrade roads, the case was dismissed, and the county later repudiated its agreement.

The district court ordered the county to perform its obligations, but the Circuit Court reversed, concluding that the district court lacked jurisdiction, noting the absence of federal question and diversity jurisdiction. It declined to find ancillary jurisdiction because the settlement agreement dispute was "factually and legally distinct from the claim giving rise to the original litigation." 571 F.2d at 1305.

The court distinguished *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), in which the Supreme Court held that when a complaint raises both a federal and a state claim, it made little sense to remit the state claim to state court and thus cause the wasteful result of two trials on the same factual nucleus. The *Fairfax* court implied that, in contrast, a federal court could decline jurisdiction in a settlement agreement dispute without causing a similar duplication of effort. The court also noted that the settlement agreement dispute raised issues of law and fact that differed from the underlying section 1983 claim.

At least one Circuit Court denied jurisdiction after analyzing extensively whether a settlement agreement resolving a dispute originally based on a federal question presents a federal question. *McCall–Bey v. Franzen*, 777 F.2d 1178 (7th Cir.1985).

But no Circuit Court has probed the rationale for exercising ancillary jurisdiction.

## C

■ For reasons already stated, if this court were writing on a clean slate it might exercise ancillary jurisdiction over the settlement agreement that led to a court-ordered dismissal of the federal claims. But, given the weight of contrary authority, this court would be unwise to do so when the court's decision could be overruled and where Rolex could obtain, in substance, the same result by other means. Accordingly, the court denies the motion.

## II

■ Rolex is not without recourse in a federal court. Based upon the facts explained in the papers it could file a new complaint alleging that Bulova violated both the Lanham Act and the settlement agreement. The court could then exercise supplemental jurisdiction over the settlement agreement dispute, under 28 U.S.C. § 1367.

That section, which became law on December 1, 1990, after all but one of the Circuit Court decisions cited above, provides in pertinent part that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

The section does not provide precise guidance as to what constitutes the "same case or controversy" under Article III. But the legislative history of the Federal Courts Study Committee Implementation Act suggests that, at the very least, the section codifies tests developed by the Supreme Court in *United Mine Workers v. Gibbs* and the Federal Courts Study Committee. *See* Joan Steinman, *Colloquy: Perspectives on Supplemental Jurisdiction: Section 1367—Another Party Heard From*, 41 Emory L.J. 85, 90–91 (1992) [hereinafter *Colloquy* ] (discussing the legislative history).

In *Gibbs*, the Supreme Court held that federal and state claims constitute a single constitutional "case" if the state claim derives from a nucleus of facts shared with a substantial federal question, and the claims are such that the plaintiff would ordinarily expect them to be tried in one proceeding. 383 U.S. at 725, 86 S.Ct. at 1138. The Federal Courts Study Committee describes supplemental jurisdiction as the power to address

state claims arising from the same "transaction or occurrence" as a federal claim. Report of the Federal Courts Study Committee 47 (1990) (quoted in *Colloquy* at 90 n. 23). At least one commentator has urged a more expansive definition of "case or controversy" than either of these tests. *Colloquy* at 92.

Whichever of these tests is appropriate, it appears that the court may exercise supplemental jurisdiction in the circumstances described here. Rolex has alleged that Bulova is wrongfully manufacturing and marketing watches that resemble Rolex watches. Rolex could bring an action in state court alleging, among other claims, that Bulova is violating the settlement agreement. It could simultaneously bring an action in federal court alleging a Lanham Act violation. Rolex should not be forced to bring such duplicative actions in two forums simply because its rights are established under both federal and state law. Since the effective date of section 1367, Rolex may pursue all claims in a federal court.

Once here Rolex may make appropriate motions with respect to its state claim.

### III

The court denies plaintiff's motion.

So ordered.