## Melnick, Appellant, *v.* Binenstock.

Argued April 25, 1935. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Lemuel B. Schofield,* for appellant.

534

*Marshall A. Coyne* and *David J. Smyth,* for appellee.

PER CURIAM, May 27, 1935:

Melnick, appellant, transferred his property to his wife, the daughter of Joseph Binenstock, upon her agreement that it would be returned to him on demand. The parties separated and Melnick demanded the reconveyance of his property. Failing to receive it, he filed a bill in equity against his wife and her father, Binenstock, charging that the defendants had conspired to and did deceive him by false and fraudulent representation as to the prosperity and condition, as it relates to this suit, of the Pale Moon Corporation of America, and that as a result of such false representation he was induced to give Binenstock $8,000 to be invested in the stock of the Pale Moon Corporation and to be held for him.

The relief prayed for was, among other things, that the $8,000 be returned. On final hearing of the case, Judge MARTIN, on September 15, 1931, entered a decree nisi, in which Binenstock was directed to return to Melnick the sum of $8,000 with interest, or to deliver to him the shares of stock in the Pale Moon Corporation of America which he purchased with moneys belonging to Melnick.

Exceptions were filed to this decree, and on January 27, 1931, those exceptions were dismissed. Later, in February of that year, the parties entered into what may be termed a compromise agreement, in which, reciting the pendency of the equity proceedings and the entry of a decree nisi, they agreed as to the settlement of the differences between them, including, among other things, the dispute as to the stock of the Pale Moon Corporation. That agreement provided that "the stock certificate to be assigned to Melnick should be the original certificate," and that if defendants were unable to return the original certificate, the $8,000 should be paid with interest. Subsequently, as stated by Judge LAMBERTON of the court below, a petition was filed praying for an interpretation of

the decree nisi. The matter came up before Judge ALES-SANDRONI, at which time all the items of the nisi decree had been satisfactorily adjusted with the exception of that relating to the stock of the Pale Moon Corporation; as to it there seemed to be some confusion as to the effect of the decree nisi and the compromise agreement. The testimony of witnesses was taken, covering in all, 162 pages. By agreement of counsel the decree nisi was made final on June 13, 1931, and was entered by the court. Thereafter, the request for an interpretation of the nisi decree was treated as an interpretation of the final decree, and in February, 1932, an opinion was filed in which it was stated that the court had "no hesitancy in finding that Joseph Binenstock purchased $8,000 worth of stock in the Pale Moon Corporation for the plaintiff with money belonging to the plaintiff. The decree requires him to deliver to plaintiff the shares of stock purchased with the money of the plaintiff, or the sum of $8,000. The 80 shares purchased for the plaintiff with the plaintiff's money are included in the stock certificates issued to Joseph Binenstock, and he should transfer 80 of these shares to the plaintiff or the sum of $8,000."

Thereafter, in September of 1932, Melnick brought this suit on the compromise agreement of February, 1931, seeking to recover $8,000 because the appellees had not turned over to him "original certificate of stock of the Pale Moon Corporation" or paid that sum. An affidavit of defense was filed raising questions of law and was sustained by the court below, which held that Melnick was barred from recovery on the ground of res judicata; this appeal followed.

Appellant seeks to draw a distinction between the final decree and his obligation under the agreement. He contends that the agreement calls for the transfer of "the original certificate for 80 shares of stock of the Pale Moon Corporation," while under the decree any certificate for 80 shares of stock would have answered appellant's demand. He endeavors to separate the agreement from the

proceeding in equity, having it in effect take the place of the final decree. The final decree was entered in June, 1931, and the agreement was made in February of that year.

We agree with counsel for appellant that after a compromise of litigation has been made the subsequent right and remedy is on the compromise agreement (12 C. J. 337, section 33), but here the agreement of compromise was of an equity proceeding, and was made prior to the final decree, which settled and determined all matters then in dispute. The compromise agreement was thus but an incident of the equity proceeding, and was superseded, as a settlement of the controversy, by the final decree subsequently entered by agreement of the parties to the suit. Where the right of one of the parties to such an agreement compromising pending litigation is contested, the true interpretation of the agreement should be found by the court in which the litigation was pending or if in equity within the terms of the decree entered in accordance with the compromise. A party seeking to enforce an agreement compromising pending litigation is not at liberty to institute in any court any action he sees fit; especially is this true as here where the agreement has been in part performed. A compromise or settlement of litigation is always referable to the action or proceeding in the court where the compromise was effected; it is through that court the carrying out of the agreement should thereafter be controlled. Otherwise the compromise, instead of being an aid to litigation, would be only productive of litigation as a separate and additional impetus. See 12 C. J. 361. If the agreement of compromise aids in the interpretation of that decree it should be given effect. The court below has decided the effect and scope of both decree and agreement; manifestly from the very nature of the subject-matter of the instant case it should be referred to the proceedings where it was specifically dealt with. Equity having acquired jurisdiction of the subject-matter of this action has ample power to

enforce its final decree and adjudicate all matters pertaining to the instant controversy.

The cause of action was embraced in the subject-matter of the equity proceedings; equity does not lose its grasp on that subject-matter even though an agreement of compromise or settlement affected it. Where disputes arise as to the compromise, that court, by petition or otherwise, must interpret it and order what shall be done.

Appeal dismissed at appellant's cost.