## Borough of Brookhaven, Appellant, *v.* Dale L. Reese, Appellee.

Argued April 3, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*James P. Gannon,* for appellant.

*Francis R. Lord,* for appellee.

OPINION BY JUDGE ROGERS, May 6, 1975:

The appellee, Dale L. Reese, acquired an equitable interest in a parcel of land located in a zoning district of the appellant, Borough of Brookhaven, Delaware County, in which apartment dwellings were and are a permitted use. As required by the zoning ordinance, Reese filed with Borough Council for its approval plans for the construction of 200 apartment units on February 22, 1971. The plans were approved on March 22, 1971. Borough Council then apparently experienced a change of heart and Reese was unable to obtain the building permit which should have followed. In December 1971, Reese commenced an action in mandamus in the Delaware County Court of Common Pleas seeking an order requiring the borough building inspector to issue the building permit. In February 1972, incident to that litigation, Reese and the borough entered into a written agreement by which the borough agreed that a permit would issue forthwith. A judge of the Court of Common Pleas of Delaware County directed the issuance of the permit in accordance with the agreement of the parties on March 10, 1972.

The building permit was issued on March 15, 1972. Reese paid a permit fee in excess of $4000, made final settlement for the land for the purchase price of $200,000 and commenced grading operations.

On June 2, 1972, Reese was advised by the borough building inspector that his building permit had been revoked. Reese thereupon filed a petition with the court

below seeking the attachment of the building inspector for contempt of the court's order of March 10, 1972. On October 6, 1972, after hearing, the court directed the building inspector to reissue the permit within 45 days. In early December 1972, Reese filed, and on December 15, 1972, Borough Council approved a revision of the plans, the most notable feature of which was a reduction in the number of units to 190. On December 15, 1972, the building permit was reissued.

In or about February 1973, the building inspector again notified Reese that his permit was revoked. Reese instituted a second contempt proceeding, and on July 24, 1973, the court below, after hearing, adjudged the building inspector to be in contempt of its order of March 10, 1972, and allowed him five days in which to purge himself by reissuing the permit. The permit was thereupon again reissued and Reese again commenced work on the tract, this time in accordance with the revised plans of December 1972 approved by Borough Council. It is noted that the borough did not appeal from any of the orders entered in the court proceedings just mentioned and that Reese never surrendered, and always maintained the validity of, the permit issued on March 15, 1972.

On December 23, 1973, the borough commenced the instant action in equity seeking a decree enjoining Reese from continuing construction of the project. It complained that the plans according to which the construction was then proceeding were not those on which the March 15, 1972 permit was issued, and that they are not in compliance with the borough zoning ordinance and another ordinance identified only as ordinance 310. This pleading disingenuously fails to mention that the plans in question, the revision by which ten units were deleted, were approved by council just before and incident to its reissuance of the permit on December 15, 1972. The complaint also fails to state in what respects the plans violate the borough's regulations. At the trial below before Judge

EDWIN E. LIPPINCOTT II the borough depended on the testimony of a recently appointed building inspector (1) that the revised plans contemplate a higher density than allowed by an amendment to the zoning ordinance adopted in October 1971, a date after council's approval of the first plans upon which the permit was issued as the result of the mandamus action on March 15, 1972 and before council's approval of revised plans on December 15, 1972, (2) that certain buffer strips, accessways and one building setback shown on the plans are not of the dimensions required by the zoning ordinance, and (3) that the plans do not expressly show that the builder will provide the kind of construction required by the borough building code in two respects.[1] Ordinance 310 turned out to be drainage regulations and no evidence of their violation was produced.

Reese's evidence consisted of a recital of the history of his dealings and litigation with the borough and evidence that he had spent $100,000 for engineering, architectural and legal fees, equipment rentals and mortgage interest since the permit was first issued. Judge LIPPINCOTT by degree nisi and, after dismissing exceptions, by final order, refused injunctive relief. The borough has appealed. We affirm.

The borough principally argues that it was entitled to an order halting the project by reason of alleged zoning violations, and does so despite the fact that it agreed in the mandamus action that a permit should issue to build in accordance with plans then and at all times since revealing the features now claimed to be violations. It relies on one of the eighteen clauses of the settlement

---

1. The building code required one-half inch plywood sheathing and masonry party walls. The plans provide for one-half inch sheathing and for party walls, without mention of the type of materials to be supplied. Judge LIPPINCOTT's decree requires that plywood sheathing and masonry party walls be provided. As noted, the complaint did not allege violations of the building code.

agreement of February 1972 by which Reese "agree[d] to subject himself to all the existing ordinances of the Borough." The permit issued on March 15, 1972 pursuant to the court order based on the agreement is in the record. It authorizes the construction of 200 units "as per plans and specifications with agreed changes in material to meet Borough required code." As we have before noted, the new density requirements, apparently allowing fewer than the now proposed 190 units, were adopted in October 1971, months before this agreement was executed, a court order entered thereon and a permit to construct 200 units issued. The substance of the agreement and the order of March 10, 1972, as the permit itself reveals, was that Reese should have a permit to build the project in accordance with the plans approved by council a year earlier and, not as the borough now contends, that the project should conform with borough regulations, including existing regulations clearly inconsistent with the plans.

Further, Section 657 of the borough zoning ordinance reserves to council "the right to increase, reduce, or alter, the area, the unit, setback and access requirements in such cases, where ... such ... may be determined by the Council to be in the best interest of the Borough." It is apparent that council either overlooked the alleged buffer, accessway and setback deviations when it approved, agreed to, and suffered the court to direct issuance of the permit or that, as it had the power to do, it waived them. In either case, it may not now assert them as grounds for halting the project. *Al Monzo Construction Company, Inc. v. Monroeville Borough,* 5 Pa. Commonwealth Ct. 97, 289 A.2d 496 (1972) is controlling.[2] There the landowner sought judicial relief from a bonding condition to the issuance of a permit imposed by a borough council.

---

2. It is noted that the defendant in the mandamus action was the borough building inspector who was represented by the borough solicitor and that the plaintiff here is the borough. They were clearly in privity.

The parties agreed on terms of settlement approved by the court and the permit was issued with changed conditions. It was later revoked on the ground that it should not have been issued because the proposed use was not one permitted by the zoning ordinance. We affirmed the order of the court below nullifying the revocation, writing:

"The appellant's contention that the permit is subject to revocation because the use it allows is prohibited in the zoning district comes much too late in these proceedings. It might well have been a valid reason for not issuing the permit when first requested or at the latest it might have been raised when the appellees filed their zoning appeal. But the appellant joined in the stipulation recognized by the court as a settlement of the matter of the propriety and terms of the grant of the permit. At that point appellees' entitlement to the permit on the agreed conditions became res judicata. Melnick v. Binenstock, 318 Pa. 533, 179 A. 77 (1935). Further, it plainly appears that the appellees proceeded with work under the conditional use permit then issued. Not only would a subsequent revocation for such a preexisting cause be grossly unfair, it might interfere with vested rights." 5 Pa. Commonwealth Ct. at 101, 289 A.2d at 497-498.

We also agree with the court below that the appellee had vested rights in the permit issued on March 15, 1972 and reissued on December 15, 1972, after agreement on plan revision sought by, and beneficial to, the borough's interests. Both the issuance and reissuance of the permit were based on applications made in good faith and obtained in litigation in which their validity was not only established by a court of law but agreed to by the borough, and both were followed by the expenditure, and the incurrence of liabilities to expend, substantial sums in reliance thereon. *See Pittsburgh v. Oakhouse Associates,* 8 Pa. Commonwealth Ct. 349, 301 A.2d 387 (1973).

Affirmed.