**The ARO CORPORATION,
Plaintiff-Appellee,**

v.

**ALLIED WITAN COMPANY,
Defendant-Appellant.**

**No. 75–1510.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 17, 1975.

Decided March 25, 1976.

Rehearing Denied May 7, 1976.

Albert L. Ely, Jr., Ely & Golrick, Cleveland, Ohio, for defendant-appellant.

George B. Newitt, Daniel M. Riess, Allegretti, Newitt, Witcoff & McAndrews, Chicago, Ill., Stanley H. Foster, Melville, Strasser, Foster & Hoffman, Cincinnati, Ohio, for plaintiff-appellee.

Before WEICK and LIVELY, Circuit Judges, and MARKEY, Chief Judge, U. S. Court of Customs and Patent Appeals.*

MARKEY, Chief Judge, U. S. Court of Customs and Patent Appeals.

This is an appeal from the district court's order for specific performance of an agreement between Allied Witan Company (Allied) and The Aro Corporation (Aro). The agreement formed the basis for settlement of patent infringement litigation before the same district court. We affirm.

### Background

In 1971 Aro instituted suit against Allied, alleging infringement of its U.S. Patent No. 2,950,775. Allied filed a counterclaim, seeking declaratory judgment of non-infringement of any valid claim and alleging unfair-competition and anti-trust violation. Pursuant to settlement, the complaint and counterclaim were dismissed without prejudice by Order dated March 25, 1974.

The parties had engaged in protracted negotiations, involving exchange of seven license drafts over a period of almost eighteen months. They then agreed to stipulate dismissal of the action and executed a written license agreement effective from April 1, 1974, and expiring with the patent on August 20, 1977. Almost before the ink had dried on the license, Allied began questioning its terms. On April 26, 1974, Allied's attorney questioned whether Aro had notified its other licensees of the license herein and alleged "substantial unlicensed infringing competition" from ten corporations. Aro responded that the license agreement required no disclosure of the type demanded by Allied and that the facts presented were insufficient to formulate an opinion on the alleged infringing competition. Aro suggested submission of samples of the devices alleged to be infringing. On

May 17, 1974, Aro demanded the first royalty payment which had been due on April 30, 1974. Allied refused payment. On September 30, 1974, Aro filed a "Motion to Vacate Order Dismissing Suit Under Rule 60 and Order Specific Performance of Settlement Agreement."

Opposing Aro's motion, Allied challenged the court's jurisdiction arguing that because the issue was purely contractual (the license) and because diversity was lacking, the matter should be resolved in the state courts. Allied further argued that Aro had failed to perform certain oral conditions precedent to Allied's obligation to perform.

Addressing the jurisdictional issue, the court below stated that:

> Jurisdiction rests upon the same footing as when the case began in 1971 since federal courts have consistently exercised their inherent power to enforce agreements settling cases in which the court originally had jurisdiction.

The court characterized Allied's reliance on alleged oral conditions precedent as "specious in light of the parol evidence rule."

Citing the interests of justice, the court granted Aro's motion for reinstatement of the case on the court's docket, enjoined Allied from not complying with the agreement, and again dismissed the complaint and counterclaim without prejudice.

### Issues

Did the district court have jurisdiction to compel specific performance of a patent license forming the basis for an agreement settling litigation in the same district court between citizens of a single state?

▮ If the court had jurisdiction, was summary enforcement of the instant settlement proper? [1]

---

* Sitting by designation.

1. We decline the "suggestion" that we treat definitively of Allied's challenge to certain rulings on motions. The challenge is without merit. As the district court correctly stated, Allied's actions productive of some of the rulings complained of "could be construed as evidence of a tactic of delay and confusion" which would "border on bad faith by counsel."

## OPINION

### *Jurisdiction*

■ It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them. *Kukla v. National Distillers Products Co.,* 483 F.2d 619 (6th Cir. 1973); *Cia Anon Venezolana De Navegacion v. Harris,* 374 F.2d 33 (5th Cir. 1967); *All States Investors, Inc. v. Bankers Bond Co.,* 343 F.2d 618 (6th Cir. 1965). This court in *All States Investors* quoted with favor from *Melnick v. Binenstock,* 318 Pa. 533, 179 A. 77 (1935), as follows:

> A compromise or settlement of litigation is always referable to the action or proceeding in the court where the compromise was effective; it is through that court the carrying out of the agreement should thereafter be controlled. Otherwise the compromise, instead of being an aid to litigation, would be only productive of litigation as a separate and additional impetus.

■ Even in those instances in which the court's original jurisdiction may have been questionable, it has jurisdiction over settlement agreements, the execution of which renders the prior controversy academic. *Meetings & Expositions, Inc. v. Tandy Corp.,* 490 F.2d 714 (2d Cir. 1974).

■ Acting within its sound discretion, a court may relieve a party from a final judgment when a "reason justifying relief from the operation of the judgment" exists. Rule 60(b)(6), F.R.C.P. Hence the Court below was clearly correct in vacating its order of dismissal. Allied's attempted repudiation of the agreement on which the dismissal rested constituted full justification therefor. The court below had not only the inherent power but, when required in the

Allied attempts to raise an issue of indefiniteness in the license. Because the terms attacked were the very terms negotiated through seven drafts to the final satisfaction of Allied, the issue is spurious. Moreover, the issue is raised in this litigation for the first time before us and cannot be considered on this appeal.

interests of justice, the duty to enforce the agreement which had settled the dispute pending before it.

■ The briefs of both parties refer to the license as the "settlement agreement." Allied, however, argues that enforcement of the agreement should be determined only by state courts because it is only a license contract between nondiverse parties. The argument must fail. The agreement in question is not merely a patent license. It is also the contractual vehicle by means of which the parties reached agreement settling their litigation. Both types of agreements are contracts; but a settlement agreement is more than a patent license even when, as here, the former rests on and is carried out by means of the latter. To permit the absence of diversity to divest the court of jurisdiction after settlement, when it could not have done so prior to settlement, would be to exalt form over substance and to render settlement in such cases a trap for the unwary. The license cannot be separated from the purpose of its birth. We are in full agreement with the district court's response to Allied's argument:

> To take the defendant's [Allied's] position that the present motion to reinstate the case for alleged failure to comply with the terms of the settlement agreement is a mere contract dispute is to close one's eyes to the reason the agreement was formed. The agreement in question came into existence not in the free market place but in response to pending litigation in a federal court. It is not understating the issue to say that without the lawsuit, the agreement might never have come to pass. Therefore, the contract entered into between the parties cannot be viewed independently of the original suit; its formation was an outgrowth of this case.

*Wiper v. Great Lakes Engineering Works,* 340 F.2d 727 (6th Cir. 1965), *cert. den.* 382 U.S. 812, 86 S.Ct. 28, 15 L.Ed.2d 60; *Walter v. U. S.,* 295 F.2d 720 (6th Cir. 1961); *Aluminum Co. of America v. Sperry Products, Inc.,* 285 F.2d 911 (6th Cir. 1960), *cert. den.* 368 U.S. 890, 82 S.Ct. 139, 7 L.Ed.2d 87.

Allied's reliance on *Kysor Industrial Corp. v. Pet, Inc.,* 459 F.2d 1010 (6th Cir. 1972), and *Arvin Industries, Inc. v. Berns Air King Corp.,* 510 F.2d 1070 (7th Cir. 1975), is misplaced. In *Kysor,* an original state suit had been removed to a federal court. In *Arvin,* a new suit had been filed on the license by the patent owner.

We hold, therefore, that the district court had jurisdiction to enforce the settlement agreement in this case.

### Summary Enforcement

■ Agreements settling litigation are solemn undertakings, invoking a duty upon the involved lawyers, as officers of the court, to make every reasonable effort to see that the agreed terms are fully and timely carried out. Public policy strongly favors settlement of disputes without litigation. Settlement is of particular value in patent litigation, the nature of which is often inordinately complex and time consuming. Settlement agreements should therefore be upheld whenever equitable and policy considerations so permit. By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before over-burdened courts, and to the citizens whose taxes support the latter. An amicable compromise provides the more speedy and reasonable remedy for the dispute. *D. H. Overmeyer Co. v. Loflin,* 440 F.2d 1213 (5th Cir. 1971).

■ This court has held that courts have the power to summarily enforce settlement agreements, though an evidentiary hearing should be held when a substantial factual dispute exists. *Kukla v. National Distillers Products Co., supra.* We agree with the court below that the situation presented here is clearly distinct from that presented in *Kukla,* wherein the very existence of an agreement constituted a fundamental fact issue. Summary enforcement of the settlement herein was determinable solely as a matter of law. The terms of the agreement are clear and unambiguous. The district court correctly viewed the alleged oral conditions precedent as "specious in light of the parol evidence rule." Hence no fact issue was present and a hearing was not required.[2] Moreover, Aro's failure to meet the alleged conditions, if permitted consideration and accepted as alleged, would not constitute an excuse for Allied's dishonoring of its agreement. Neither condition affected the terms of the agreement. Whether other licensees accepted the lower royalty and the advertising provisions of Allied's license could have no effect on Allied's duty to comply with its agreement. Similarly, as admitted in Allied's reply brief, the life of the license is so short and the amount of royalties involved herein is so small that Allied's performance of its agreement would be substantially unaffected by the existence of unlicensed competition. Finally, we note that Allied has accepted all the benefits of the settlement agreement, including, *inter alia,* dismissal of the suit, release for past infringement of Allied, its suppliers and customers, and forgiveness of certain costs awarded against Allied by the District Court, without Allied's having performed its singular duty under the license.

Although allied asks us only to reverse the district court's order of May 25, 1974, and to return the parties to the status quo following the stipulated dismissal, leaving Aro to an action in the state courts for enforcement of the license, a large segment of Allied's brief is devoted to a complaint that its counterclaim was erroneously dismissed following issuance of the injunction. *Lear, Inc. v. Atkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), is cited for the broad proposition that licensees must be permitted to attack the validity of the licensed patent, in order to protect a public

---

2. In a letter to the district court, Allied's counsel stated a willingness to attend a hearing but stated, *"However"* (emphasis in letter), that Aro's "mere request" for an oral hearing on its motion was insufficient support for "departure from the long-standing practice in this District for submission of motions on memoranda only."

interest in the demise of invalid patents.[3] Allied does not directly seek remand for trial of its counterclaim but argues that the public policy which Allied finds in *Lear* would be advanced by relegation of the case to the state courts and subsequent trial therein of the validity of the patent.[4]

We need add little herein to the comparatively exhaustive discussion by this court of the relationship between the public interest in getting invalid patents declared invalid and the public interest in peacefully settling lawsuits in *Schlegel Manufacturing Co. v. USM Corporation*, 525 F.2d 775, 187 U.S. P.Q. 417 (6th Cir. 1975). It may be enough to say that we do not read *Lear* as requiring that the courts, state or federal, be subjected to the treatment here attempted by Allied.

Having negotiated its settlement license at arm's length over many months, during all of which time it was in court with full opportunity of challenging the patent involved, and having stipulated dismissal of its counterclaim, Allied now seizes upon *Lear* as somehow providing it with an escape from its agreement and with a right to start all over again, four years later, in the state courts, which are unfamiliar with the facts and circumstances surrounding the agreement. Whatever boon *Lear* may have provided those who take licenses under certain conditions, it cannot be interpreted so broadly as to condone a kind of gamesmanship, wherein an alleged infringer, after employing the judicial system for months of discovery, negotiation and sparring, aban-

dons its challenge to validity, executes a license in settlement, and then repudiates the license and seeks to start the fight all over again in the courts. *Lear* does not require that the courts answer every beck and call of the fickle suitor whose transient affection is governed by such on-again, off-again strategies. The mantle of *Lear* ill befits him who would use and reuse the courts as pawns in a private game of varying design. The "defender of the public interest" role is not available to him who would frustrate on whim the orderly conclusion of litigation.

Moreover, the factual basis apparently underlying the definition of the public interest in *Lear* is inapplicable here. Whether the assumption that all patents limit competition and raise prices has ever been supported anywhere by evidence,[5] the record before us clearly establishes the contrary with respect to Aro's patent. In the present case, competing production by Aro, by its other licenses, and by the ten additional unlicensed manufacturers named by Allied, insures that the competitive marketplace, not any monopoly consideration, will set the price of the patented product. Moreover, there is no evidence that the public has no alternative unpatented product available. If Allied is held to its settlement agreement, and precluded from reviving its abandoned challenge to the validity of the patent in this action, it will merely share a small part of its normal profit with Aro. Allied tells us that its maximum possible payment to Aro under the license can-

3. Though less often mentioned, there is of course a strong public interest in upholding valid patents and in maintaining incentive to inventors to conceive and disclose patentable solutions to problems of environmental pollution, energy, economy, production, housing and the like, and to investors to risk the sums required for development and marketing of products embodying those solutions. That interest, reflected in the Constitution, Art. I, Sec. 8, is equally injured when invalid patents are held valid as when valid patents are held invalid.

4. The public interest in the peaceful settlement and termination of litigation applies equally to federal and state courts. The effect of the

litigation explosion, with its resultant delays, is not limited to federal courts. Transfer of unnecessary and spurious litigation in either direction between federal and state courts does equal harm.

5. In *Northern Pacific Railway Co., et al. v. U. S.,* 356 U.S. 1 (1957), at 10, footnote 8, 78 S.Ct. 514, 520, 2 L.Ed.2d 545, the Supreme Court stated, "of course it is common knowledge that a patent does not always confer a monopoly over a particular commodity. Often the patent is limited to a unique form or improvement of the product and the economic power resulting from the patent privileges is slight. * * *."

not amount to more than $500 per year, or a total of approximately $1,668 for the full 3⅓ year term of the license.

Unlike earlier cases involving partial trials and consent decrees of infringement and validity, the present case involves only a stipulated dismissal, without prejudice, and a license. Nonetheless, the rationale of *Schlegel, supra,* is fully applicable to the case before us. By holding Allied to its agreement, as was said in *Schlegel,* "we do not close the doors of the courts to litigation on the issue of patent validity," except as to Allied and its privies and only after Allied had had the opportunity to litigate the issue fully. Indeed, in the present case we are assured of at least two other licensees with the incentive to challenge the patent envisaged in *Lear* as residing in licensees. We have, as well, the presence of at least ten alleged infringers, any of which may elect to challenge the patent if Aro should attempt further enforcement thereof.

■ In balancing the public interest in settlement of lawsuits against that of removing invalid patents, we do not perceive the doctrinal standoff envisaged by Allied in its reliance on *Lear.* Though neither policy can be said to be transcendent, the choice need not be draconian. Evidence, not monopolophobia, should control. Where it can be shown that a patent does in fact have the effect of a "tax on the public," is in fact a cause of increased pricing, is in fact serving to limit competition in its product line or does in fact exert substantial effect upon the public and where it can be shown that the proffered challenge is the only one likely to be made, it may be that judicial policy should place determination of the possibility that such patent may be invalid ahead of holding litigants to their settlement agreements. In the absence of such evidence respecting the true effect of the specific patent or patents involved in a particular case, the clear public interest in settlement of lawsuits may be expected to prevail. As above indicated, the evidence herein establishes that none of the mentioned effects exists with respect to Aro's patent.

For all of these reasons, we conclude that the public interest in the settlement of this litigation far outweighs any public interest to be served by providing Allied with a second chance to litigate the validity of the soon-to-expire patent involved in this case.

We find no reason in equity or in law why the settlement should not be enforced by an injunction against Allied's failure to comply with the license agreement herein. Accordingly, the order of the district court is affirmed. Costs of the appeal are assessed against the appellant. The motion for attorneys' fees and additional costs is denied.