### Louis J. PORRECO

v.

### MALENO DEVELOPERS, INC.,
John D. Maleno, Lynn E. Maleno (Two Cases).

Anthony PASTORE, Carl Pastore, Don Pastore and Paul Pastore, d/b/a Pastore Brothers, Tenants in Common, and d/b/a Pastore Brothers, a Pennsylvania Partnership

v.

### Louis J. PORRECO and Maleno Developers, Inc.

v.

### TOWNSHIP OF MILLCREEK
(Two Cases).

Anthony PASTORE, Carl Pastore, Don Pastore and Paul Pastore, d/b/a/ Pastore Brothers, Tenants in Common, and d/b/a Pastore Brothers, a Pennsylvania Partnership

v.

### COMMONWEALTH of Pennsylvania, STATE SYSTEM OF HIGHER EDUCATION, for the Use of EDINBORO UNIVERSITY OF PENNSYLVANIA

v.

### MILLCREEK TOWNSHIP.

Appeal of MALENO DEVELOPERS, INC., John D. Maleno, Lynn E. Maleno, Appellants (Two Cases).

Commonwealth Court of Pennsylvania.

Argued June 8, 1998.

Decided Sept. 8, 1998.

---

James R. Fryling, Erie, for appellants.

Andrew J. Conner, Erie, for appellees, Pastore Bros.

Brian H. Baxter, Pittsburgh, for appellee, Com., State System of Higher Educ.

Before McGINLEY and SMITH, JJ., and NARICK, Senior Judge.

SMITH, Judge.

Maleno Developers, Inc., John D. Maleno and Lynn E. Maleno (collectively, Maleno) appeal from an order of the Court of Common Pleas of Erie County that transferred Maleno's motion to enforce a settlement to the Board of Claims.[1] The issue before this Court is whether a court of common pleas has jurisdiction over an alleged settlement agreement reached during the course of a trial in which the Commonwealth has intervened or whether the Board of Claims has jurisdiction to determine whether the parties entered into a settlement agreement and, if so, the enforcement of the alleged settlement agreement.

I

This consolidated appeal has a long procedural history, which stems from property damage caused by excessive storm water drainage and runoff. Louis J. Porreco (Porreco) commenced an action in equity in Erie County at docket number 83–E–1986 against Maleno.[2] Soon thereafter, Anthony Pastore, Carl Pastore, Don Pastore and Paul Pastore, d/b/a Pastore Brothers (Pastore), commenced an action in equity at docket number 96–E–1986 against Porreco and Maleno.[3] Porreco joined the Township of Millcreek as an additional defendant. These cases were consolidated for discovery purposes.[4] In 1989, Por-

1. This matter was reassigned to this author on July 24, 1998.

2. Erie County 83–E–1986 (on appeal as No. 976 C.D.1995) contains counts in trespass for negligence and nuisance as well as breach of contract claims based upon agreements reached between Porreco and Maleno for the correction of storm water runoff.

3. Erie County 96–E–1986 (on appeal as No. 977 C.D.1995) includes a tort claim for surface water damage and claims for violations of the Storm Water Management Act, Act of October 4, 1978, P.L. 864, as amended, 32 P.S. §§ 680.1–680.17.

4. In the mid–1980s, Maleno developed property called Calico Fields, which was located at a higher elevation than the property owned by Porreco. Maleno paid Porreco $45,000 to install a storm water system and to accept the additional runoff created by the development of Calico Fields. Porreco failed to install the storm water system. In September 1986, heavy rains fell, which caused surface water to flow from Calico Fields to Porreco's property and then to cross a street onto Pastore's Willowood Apartment complex. Apparently, Millcreek Township became a party to the suits because it failed to require the construction of the storm water system, even though it knew of its necessity.

reco gifted a portion of his land to Edinboro University, causing Pastore to commence a second action at 15–E–1989, against the Commonwealth, State System of Higher Education for the Use of Edinboro University of Pennsylvania (Edinboro).

The complaint essentially had three counts: (1) an equity action claiming violation of the Storm Water Management Act (SWMA), Act of October 4, 1978, P.L. 864, *as amended,* 32 P.S. §§ 680.1–680.17; (2) a claim for violation of an agreement between Edinboro's grantor (Porreco) and Maleno, which allegedly bound Edinboro as a covenant running with the land; and (3) an action for negligence or nuisance under common law. Edinboro joined Porreco and Maleno as additional defendants, as well as Millcreek Township. The trial court transferred the action at 15–E–1989 to Commonwealth Court because Edinboro was a state agency, and the court therefore believed that the cause of action fell under the Commonwealth Court's original jurisdiction pursuant to Section 761(a) of the Judicial Code, *as amended,* 42 Pa.C.S. § 761(a).[5]

Eventually on July 30, 1991, a non-jury trial commenced in Erie County in the causes of action docketed at 83–E–1986 and 96–E–1986. Following the testimony of Porreco's first witness, the parties, including Edinboro's counsel, met in the trial judge's chambers, stating that a settlement agreement had been reached. No court reporter was present; however, the substance of the settlement was contained in a letter dated August 2, 1991. The essence of this letter

was that Edinboro would permit construction of a retention pond on its property (originally owned by Porreco) and assume responsibility for 40% of the cost of the construction up to a total of $10,000. Millcreek Township assumed future responsibility for the maintenance of the pond and agreed to pay $5,000 toward construction and $5,000 toward damages for the Pastore claim. Maleno and Porreco's insurers committed a total of $23,000 toward a settlement, and Porreco agreed to withdraw his damage claim. Pastore agreed to withdraw his claim in consideration of the payment of $15,000 from the settlement contribution.

Based upon this alleged settlement, the judge adjourned the trial. The parties began the process of exchanging information for the purpose of establishing the design of the retention pond. The exchange of information continued for a period of two years. In 1993 the trial court ordered engineering representatives from Pastore, Millcreek Township and Edinboro to meet for the purpose of furthering the retention pond's construction. Again details were completed.

In an effort to get the engineering details finalized, on June 8, 1994, Maleno filed a motion to enforce settlement. In response, Edinboro filed a motion to dismiss, alleging that no final settlement existed and that, if a settlement did exist, the trial court did not have jurisdiction to enforce a settlement against the Commonwealth. Edinboro alleged, rather, that the Board of Claims would have jurisdiction over the enforcement of such an agreement.[6] The Act commonly

**5.** Erie County 15–E–89 became this Court's No. 41 M.D.1991. In 1992 Edinboro and Millcreek Township filed for summary judgment. In *Pastore v. Commonwealth, State System of Higher Education, Edinboro University,* 152 Pa.Cmwlth. 111, 618 A.2d 1118 (1992), this Court essentially held that Edinboro had no vicarious liability based on its status as Porreco's successor in interest and that no statutory violation existed under the SWMA. This Court transferred back to the trial court claims under common law or in the nature of trespass for negligence and nuisance, as not being within our original jurisdiction. These remaining claims are similar to those at 83–E–1986 and 96–E–1986. This Court denied Millcreek Township's summary judgment motion, which claimed it was immune from suit. The Court retained original jurisdiction regarding Edinboro's alleged liability arising from its

alteration of the land after it received the property and built a parking lot, which again increased the surface water runoff onto Pastore's property. The remainder of No. 41 M.D.1991, in this Court's original jurisdiction, has been stayed, pending resolution of the cases at 83–E–1986, 96–E–1986 and the claims that were returned to Erie County in 15–E–89.

**6.** This Court notes that in 1991, the settlement of the issues in this non-jury trial at 83–E–1986 and 96–E–1986 was important and advantageous to Edinboro. A settlement would terminate the proceedings pending in Commonwealth Court and make it unnecessary for Commonwealth Court to resolve Edinboro's motion for summary judgment in No. 41 M.D.1991 and would eliminate significant risk to Edinboro. In 1991, when

known as the Board of Claims Act, Act of May 20, 1937, P.L. 728, *as amended,* 72 P.S. §§ 4651–1–4651–10, requires that a claim against the Commonwealth seeking enforcement of rights that were created by contract be instituted before the Board of Claims. *Xpress Truck Lines, Inc. v. Pennsylvania Liquor Control Board,* 503 Pa. 399, 469 A.2d 1000 (1983); *Ezy Parks v. Larson,* 499 Pa. 615, 454 A.2d 928 (1982). However, the Commonwealth cannot bring claims against non-Commonwealth defendants before the Board of Claims. *Id.*

■ Despite the fact that Edinboro had participated in all of the trial proceedings, appeared at the non-jury trial and proposed some or all of the substantial terms of the alleged settlement, the trial court concluded that it did not have jurisdiction over Edinboro to enforce the alleged settlement agreement and dismissed the motion to enforce settlement. In a one-page opinion, citing *Shovel Transfer and Storage, Inc. v. Simpson,* 523 Pa. 235, 565 A.2d 1153 (1989), the trial court noted that the Board of Claims Act provides the Board of Claims with exclusive jurisdiction to hear and determine claims against the Commonwealth arising from contracts entered into with the Commonwealth where the amount involved in over $300. The trial court concluded that the Board of Claims was the proper forum. The Court will review Maleno's motion to enforce settlement as it would a dismissal of a complaint, *Bendas v. Upper Saucon Township,* 127 Pa. Cmwlth. 378, 561 A.2d 1290 (1989), and accept all well-pleaded facts as being true.

## II

■ Although the Pennsylvania Supreme Court has long recognized that a court in which a settlement was reached has the power to enforce said settlement, *Melnick v. Binenstock,* 318 Pa. 533, 179 A. 77 (1935), Edinboro contends that only the Board of Claims has jurisdiction over the enforcement of an agreement when the Commonwealth is

involved. The Court notes that Edinboro came into common pleas court and allowed a trial to begin, then joined with the other parties and presented the court with a proposed settlement. Only when the frustrated parties sought to have the proposed settlement enforced, after years of attempting to finalize the details, did Edinboro claim that the Board of Claims alone has jurisdiction to enforce the settlement, if, in fact, one exists.

Because an objection to subject matter jurisdiction may be raised at any stage of a case, even on the appellate level by the parties or by the court *sua sponte, Department of Transportation v. Forte,* 29 Pa.Cmwlth. 415, 371 A.2d 526 (1977), the Court must address the central issue of where proper jurisdiction lies. The jurisdiction of the Board of Claims is set forth in Section 4 of the Board of Claims Act, 72 P.S. § 4651–4, which provides in pertinent part: "The Board of Claims shall have exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more." The Supreme Court has construed this language to mean that the Board of Claims is empowered to entertain all claims based in contract against the Commonwealth, irrespective of the type of relief sought or whether the Board has the power to grant the type of relief requested. *Xpress Truck Lines, Inc.; Ezy Parks; Emergency Medical Services Council, Inc. v. Department of Health,* 499 Pa. 1, 451 A.2d 206 (1982).

Maleno contends that the trial court erred in concluding that jurisdiction over Maleno's motion to enforce settlement is properly in the Board of Claims. Maleno relies in part upon the Supreme Court's decision in *Keenheel v. Commonwealth, Pennsylvania Securities Commission,* 523 Pa. 223, 565 A.2d 1147 (1989), where the employee, an attorney with the Pennsylvania Securities Commission (Commission), filed a petition in the Commonwealth Court alleging retaliatory firing,

the alleged settlement agreement was negotiated, Edinboro was exposed to Pastore's claim that Edinboro had assumed the liability of Porreco (its predecessor in title) to Pastore and Maleno. As stated in n3, Porreco and Maleno had entered

into contracts for a storm water sewer, requiring Porreco to construct the sewer. Porreco had failed to construct the storm water sewer even though he had accepted $45,000 from Maleno.

and the parties commenced negotiations. The parties arrived at a settlement which, among other provisions, permitted the employee to resign and required the Commission to keep his employment records closed from public scrutiny. Roughly seven months later, the employee commenced another action in the Commonwealth Court, alleging that the Commission had committed a material breach of the settlement agreement by disclosing negative employment record information to a member of the public. He sought rescission of the settlement, which would permit reinstatement of his discrimination actions. This Court transferred the matter to the Board of Claims, concluding that the action arose under a contract entered into by the Commonwealth. The Supreme Court reversed.

The Supreme Court referred to its decision in *Shovel Transfer and Storage, Inc.*, where a supplier who believed that it had a contract to provide warehouse space filed an action in this Court seeking declaratory and injunctive relief after another party was awarded the contract. The supplier argued that certain state officials who refused to execute its contract had a statutory duty to sign. The Supreme Court rejected the supplier's argument that its action did not arise from a contract but rather was an attempt to compel the officials to comply with their statutory duties:

> The mere fact that the validity of a contract may turn upon issues of statutory duty does not create a statutory right of action. *Rather, the focus is upon the origin of the rights claimed.* In the instant matter, Shovel's objective is to establish the contractual relationship. Shovel's right to pursue this objective derives necessarily from the rights and obligations created by the contract, not by the alleged violation of a statute by the [agency] or the appellants. Shovel's action thus assumes the nature of a breach of contract action in which a traditional remedy for the breach, namely specific performance, is sought. The proper forum for this type of action, therefore, is the Board of Claims.

*Id.*, 523 Pa. at 241, 565 A.2d at 1156 (emphasis added). The Supreme Court held also that the Board of Claims, as any judicial tribunal, has authority to determine its jurisdiction. In that context, it had jurisdiction to decide the threshold question of whether a contract was "entered into" with the Commonwealth at all.

In *Keenheel* the Supreme Court stated:

> While it may be true that the contract is the subject of the instant action, it is not the basis for the claim asserted by the appellant against the Commonwealth. . . .
>
> The jurisdiction of the Board of Claims is not triggered simply because a contract may be involved in an action, rather the jurisdictional predicate is satisfied only when the claimant relies upon the provisions of that contract in asserting the claim against the Commonwealth. . . . While the immediate subject of the controversy focuses on an alleged contract, this is not an action in which appellant is asserting a claim against the Commonwealth under the contract at issue.

*Id.*, 523 Pa. at 227–228, 565 A.2d at 1149.

As Maleno argues, in *Shovel Transfer and Storage, Inc.* jurisdiction was proper in the Board of Claims because the petitioner was asserting rights that were derived from the provisions of a contract. Focusing on the origin of the rights claimed in the present case reveals that they are rights deriving from claims of negligence or nuisance. This Court's order of December 4, 1992 in *Pastore* specified the aspects of the case that were returned to the trial court:

> 5. All claims in this case under the common law or otherwise in the nature of trespass actions seeking damages for negligence or nuisance, including such claims of the plaintiff against the state and such claims of the state against additional defendant Millcreek Township, are hereby retransferred to the Court of Common Pleas of Erie County, to be consolidated with the like claims against the private landowners which remain in the related separate cases there. . . .

*Pastore*, 618 A.2d at 1126. As was true in *Keenheel*, this is not an action where the basic claim asserted by the plaintiff is based upon a contract. Therefore, the trial court

erred in concluding that jurisdiction was proper in the Board of Claims.

Edinboro argues, however, that it is contesting the existence of a settlement. It cites *Shovel Transfer and Storage, Inc.* for the proposition that claims arising from contracts often involve disputes over the existence of an alleged contract as well as the liability flowing from it and that the Board of Claims necessarily must determine as a factual predicate whether a valid contract exists. The Court notes, however, that the Supreme Court did not hold in *Shovel Transfer* that whenever the existence of a contract with a state agency is challenged the Board of Claims has jurisdiction to determine the question, regardless of the nature of the underlying claim against the Commonwealth. Such a holding would be flatly contrary to *Keenheel.*

Because the underlying claims against the Commonwealth in this case do not in any sense arise from a contract, jurisdiction over Maleno's motion to enforce the settlement remains in the trial court. Accordingly, the order of the trial court transferring this matter to the Board of Claims is reversed, and these cases are remanded to the trial court for further proceedings on Maleno's motion to enforce the settlement.

### ORDER

AND NOW, this 8th day of September, 1998, the order of the Court of Common Pleas of Erie County is reversed, and this matter is remanded to the court for further proceedings.

Jurisdiction is relinquished.

NARICK, Senior Judge, files a dissenting opinion.

NARICK, Senior Judge, dissenting.

I must respectfully dissent.

The trial court concluded that it did not have jurisdiction over Edinboro to enforce the alleged settlement, stating:

The Board of Claims Act provides that the Board 'shall have the exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more....' Pursuant to such statute, the Board of Claims is the exclusive forum to hear all contractual claims against the Commonwealth. *Shovel Transfer and Storage, Inc. v. Simpson,* 523 Pa. 235, 565 A.2d 1153 (1989). Since the Defendant is seeking to enforce a contractual settlement agreement in which the Commonwealth is a party, this Court is without jurisdiction to adjudicate this matter and the Board of Claims is the appropriate forum.

Even though both state and federal law recognize that a court in which a settlement was reached has the power to enforce said settlement, *Melnick,* Edinboro contends that only the Board of Claims has jurisdiction over enforcement of a contract, when the Commonwealth is involved. This would not pertain to enforcement of the settlement over non-Commonwealth parties.

As stated by the majority, the jurisdiction of the Board of Claims is set forth under Section 4 of the Claims Act, 72 P.S. § 4651–4, which provides in pertinent part:

The Board of Claims shall have exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more.

This means that the Board of Claims is empowered to entertain all claims based in contract against the Commonwealth, irrespective of the type of relief sought or whether the Board has the power to grant the type of relief requested. *Xpress Truck Lines; Ezy Parks; Emergency Medical Services Council.* Although sovereign immunity originally barred claims against the Commonwealth, the establishment of the Board of Claims essentially waived such immunity by creating a tribunal, which specifically entertains contract actions against the Commonwealth.

Two Supreme Court cases, *Shovel Transfer & Storage, Inc.* and *Keenheel* represent the law regarding the Board's jurisdiction. I will closely examine the facts of each case, as these facts are controlling here.

In *Shovel Transfer & Storage, Inc.*, Shovel entered into a lease with the Pennsylvania Liquor Control Board (PLCB) for a warehouse facility. The PLCB furnished Shovel with a fully negotiated contract signed by all of the necessary signators, except the Comptroller and the Budget Secretary, who refused to affix their signatures because the contract did not follow the normal bidding process. Shovel filed an action in the Commonwealth Court to compel the Comptroller and the Budget Secretary to sign the contract or to have the contract declared valid without their signatures. The Commonwealth filed preliminary objections, stating that proper jurisdiction was with the Board of Claims. This Court accepted Shovel's theory of the case as being statutory rather that contractual and retained jurisdiction. On appeal, the Supreme Court reversed, holding that the rights Shovel asserted derived only from the underlying contract and not from any statutory basis and thus, the Board of Claims had exclusive jurisdiction. The Court held that the mere fact that the validity of the contract may turn upon issues of statutory duty, the focus must be upon the origin of the rights claimed.

Decided a few days prior to *Shovel Transfer & Storage, Inc., Keenheel* also addressed whether the Board of Claims had exclusive jurisdiction to determine the underlying claim. Keenheel was an attorney with the Pennsylvania Securities Commission. In early 1987, he filed race discrimination charges against the Commission. In June, the Commission terminated him, effective September 1, 1987. In response, Keenheel filed a petition in Commonwealth Court, alleging that the termination was in retaliation for filing the charges of race discrimination. Negotiations commenced between Keenheel and the Commission regarding the alleged retaliatory discharge. However, shortly before the termination was to occur, the parties entered into a settlement agreement whereby Keenheel would resign and would receive six thousand dollars in satisfaction of costs and expenses. The agreement further provided that all personnel records would be held "non-public," if Keenheel would withdraw his charges of race discrimination.

The Commission, however, purportedly disclosed to a member of the general public unfavorable allegations regarding Keenheel's job performance. Because of the Commission's breach, Keenheel commenced an action seeking rescission of the settlement agreement in Commonwealth Court. The Commonwealth Court determined that the cause of action arose from a contract and transferred the action to the Board of Claims. On appeal, the Supreme Court did not agree, distinguishing the case from *Shovel.*

While the majority cites *Keenheel,* it does not cite this pertinent section in full, which states:

> While it may be true that the contract is the subject of the instant action, it is not the basis for the claim asserted by the appellant against the Commonwealth. *Indeed, the instant contract poses an impediment to the claim appellant seeks to assert against an agency of the Commonwealth. This distinction is critical to the instant inquiry. We are not here concerned with a contract claim being asserted against the Commonwealth. To the contrary, appellant has brought the instant action in an effort to avoid any obligation arising from the challenged contract.*
>
> The jurisdiction of the Board of Claims is not triggered simply because a contract may be involved in an action, rather the jurisdictional predicate is satisfied only when the claimant relies upon the provisions of that contract in asserting the claim against the Commonwealth.

*Id.* at 227–228, 565 A.2d at 1149. (Emphasis added notes the portion the majority has edited from its opinion).

Maleno maintains that the cause of action does not arise from a contract, but that the claim is based in common law negligence and nuisance. However, *Shovel* and *Keenheel* do not dictate such a conclusion.

In *Shovel,* the Supreme Court concluded that Shovel's objective was to establish a contractual relationship, while in *Keenheel,* it concluded that the claimant did not rely on the provisions of the contract to assert his claim. Here, all the parties have attempted to come together and establish their duties in

relation to the construction of a storm water drainage system. Their objective was none other than to create a contractual relationship. The majority asserts that as in *Keenheel,* the basic claim was not based upon a contract, but Maleno relies only upon the provisions of the alleged settlement agreement in the Motion to Enforce against the Commonwealth. Maleno makes no argument based upon statute or tort law. Therefore, based upon the Supreme Court's analysis in *Shovel* and *Keenheel,* I would hold that proper jurisdiction lies with the Board of Claims.[1]

I would, however, instruct the Board that before reaching the point of discussing the enforcement of the "settlement," that it must determine whether a settlement was in fact reached. While many issues were covered in the letter of August 2, 1992, major technical points were not discussed. These points include the location of the retention pond, the discharge rate of the water and whether the retention pond must meet the 100–year storm requirements of Millcreek Township.

In *Shovel Transfer & Storage, Inc.,* the Supreme Court held that the Board was "competent to evaluate the legal issues attendant to a determination of whether a contract has been 'entered into' for purposes of determining its jurisdiction."[2] *Id.* at 242, 565 A.2d at 1156. Thus, the Board of Claims must be directed to first, determine whether, in fact, the parties entered into a lawful settlement agreement. As all other judicial tribunals, *Foley Brothers v. Commonwealth,* 400 Pa. 584, 163 A.2d 80 (1960), the Board of Claims has the duty to decide all issues in a cause of action, over which it has jurisdiction. *Thompson v. Fitzgerald,* 329 Pa. 497, 198 A. 58 (1938), *aff'd sub nom. Princess Lida of Thurn & Taxis v. Thompson,* 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939).

Accordingly, I would affirm the trial court's finding that the Board of Claims has jurisdiction and transfer the motion to en-

force settlement in 83–E–1986 and 96–E–1986 to the Board of Claims.

---

1. Further, the portion of this Court's December 4, 1992 Order which the majority cites is from Erie County case 15–E–1989, which was transferred to this Court's original jurisdiction and became No. 41 M.D.1991. That case is not the consolidated appeal presently before us and concerns issues separate from those before this Court on appeal.

2. Appeals from legal errors by the Board are to the Commonwealth Court. *See e.g. Commonwealth, State Highway and Bridge Authority v. E.J. Albrecht Co.,* 59 Pa.Cmwlth. 246, 430 A.2d 328 (1981).