Louis J. PORRECO

v.

MALENO DEVELOPERS, INC., John D. Maleno and Lynn E. Maleno.

Anthony Pastore, Carl Pastore, Don Pastore and Paul Pastore, d/b/a Pastore Brothers, Tenants in Common and d/b/a Pastore Brothers, a Pennsylvania Partnership

v.

Louis J. Porreco and Maleno Developers, Inc.

v.

Township of Millcreek.

Anthony Pastore, Carl Pastore, Don Pastore and Paul Pastore, d/b/a Pastore Brothers, Tenants in Common and d/b/a Pastore Brothers, a Pennsylvania Partnership

v.

Commonwealth of Pennsylvania, State System of Higher Education, for the use of Edinboro University of Pennsylvania

v.

Township of Millcreek.

Anthony Pastore, Carl Pastore, Don Pastore and Paul Pastore, d/b/a Pastore Brothers, Tenants in Common and d/b/a Pastore Brothers, a Pennsylvania Partnership

v.

Commonwealth of Pennsylvania, State System of Higher Education, for the use of Edinboro University of Pennsylvania

v.

Township of Millcreek.

State System of Higher Education, for the use of Edinboro University of Pennsylvania, Appellant.

Commonwealth Court of Pennsylvania.

Argued June 5, 2000.

Decided Sept. 13, 2000.

Reargument Denied Nov. 27, 2000.

James F. Petraglia, Pittsburgh, for appellant.

James R. Fryling, Erie, for appellees, Maleno Developers and John & Lynn Maleno.

Andrew J. Conner, Erie, for appellees.

BEFORE: SMITH, Judge, FLAHERTY, Judge, McCLOSKEY, Senior Judge.

SMITH, Judge.

The State System of Higher Education for the use of Edinboro University of Pennsylvania (Edinboro) appeals from the July 14, 1999 order of the Erie County Court of Common Pleas which ordered Edinboro to construct a retention basin on its property pursuant to an alleged settlement agreement with the other parties to this litigation. The issues before the Court are whether the trial court erred when it found that the parties had a meeting of the minds and reached a final settlement to the dispute; whether the alleged settlement agreement contains the essential terms for the existence of a valid contract; and, if a settlement agreement exists, whether the trial court's order improperly changed the terms.

This protracted litigation has previously reached this Court on two occasions in matters involving both the Court's original and its appellate jurisdiction. The lengthy procedural history of the case is fully detailed in *Porreco v. Maleno Developers, Inc.*, 717 A.2d 1089 (Pa.Cmwlth.1998). In summary, the litigation stems from property damage caused by excessive storm water drainage and runoff flowing from properties then owned by Appellees Louis J. Porreco and Maleno Developers, Inc. (Maleno) onto properties owned by Appellee Anthony Pastore and by other parties to this litigation. Porreco gifted a portion of his land to Edinboro in 1989 thereby involving Edinboro in the litigation. The various cases were consolidated, and a nonjury trial commenced on July 30, 1991. However, the trial was adjourned when:

[f]ollowing the testimony of Porreco's first witness, the parties, including Edinboro's counsel, met in the trial judge's chambers, stating that a settlement agreement had been reached. No court reporter was present; however, the substance of the settlement was contained in a letter dated August 2, 1991. The essence of this letter was that Edinboro would permit construction of a retention pond on its property (originally owned by Porreco) and assume responsibility for 40% of the cost of the construction up to a total of $10,000.

*Id.*, 717 A.2d at 1091. The letter further specified additional parties who would maintain the basin and who would contribute specified amounts toward its construction.

Thereafter, the parties began exchanging information for the purpose of designing the basin. In a December 2, 1991 letter, Attorney Connor, counsel for the Pastore litigants, asked the court to schedule a conference in the matter because he believed that Edinboro "may propose a retention pond that is less than what would be required to withstand a 100 year storm." In a letter dated the same day, Attorney Connor asked Attorney Eidemueller, counsel for Edinboro, whether the retention basin to be proposed would withstand a 100–year storm and advised Attorney Eidemueller that "if it doesn't meet a 100 year storm, I don't believe there is any reasonable chance that this matter can be settled...." Attorney Eidemueller responded in a December 13, 1991 letter that Edinboro would place a retention basin on the property "that was in accordance with good engineering principles and what would be required by [the Pennsylvania Department of Environmental Resources (DER)]." Attorney Eidemueller asserted that his client never agreed to the 100–year standard as a fixed requirement. The parties failed to reach a consensus on the design of the retention basin, and no basin has been constructed on Edinboro's property.

On June 8, 1994, Maleno filed a petition to enforce settlement. Edinboro respond-

ed with a motion to dismiss, alleging that no final settlement existed and that, if a settlement did exist, the trial court did not have jurisdiction to enforce a settlement against the Commonwealth. The trial court dismissed Maleno's petition to enforce the settlement, concluding that it lacked jurisdiction and that the Board of Claims was the proper forum. On September 8, 1998, this Court reversed the trial court's order and remanded the matter to the trial court for further proceedings. *See Porreco.*

On remand, the trial court found that Edinboro entered into a binding agreement with the other parties to construct the retention basin on its property and that Edinboro failed to construct the basin. The trial court ordered Edinboro to determine (1) the requirements of DER with regard to the construction of the basin, (2) the requirements of good engineering practice with regard to the construction of the basin and (3) the present cost of constructing the basin. The court further ordered that "the pond shall be constructed on the property of Edinboro University, consistent with the terms of the agreement." Trial Court's Order of July 14, 1999.

■ As an initial matter, the Court must determine whether this appeal should be quashed because Edinboro failed to file post-trial motions from the trial court's July 14, 1999 order. Appellees contend that the proceedings in the trial court represented a nonjury trial and that Edinboro waived all issues for appellate review by failing to file post-trial motions pursuant to Pa. R.C.P. No. 227.1(c)(2). *See McCormick v. Northeastern Bank of Pennsylvania*, 522 Pa. 251, 561 A.2d 328 (1989). However, the Note to Rule 227.1(c)(2) provides in pertinent part:

A motion for post-trial relief may not be filed to orders disposing of prelimi-

nary objections, motions for judgment on the pleadings or for summary judgment, motions relating to discovery or other proceedings which do not constitute a trial. See *U.S. National Bank in Johnstown v. Johnson*, 506 Pa. 622, 487 A.2d 809 (1985).

A motion for post-trial relief may not be filed to matters governed exclusively by the rules of petition practice.

The proceedings from which Edinboro appeals were initiated by Maleno's petition to enforce the settlement. The Supreme Court held in *Coco Brothers, Inc. v. Board of Public Education of the School District of Pittsburgh*, 530 Pa. 309, 608 A.2d 1035 (1992), that post-trial motions were not required, or even permissible, from a trial court's order disposing of a petition to enforce a judgment. The Supreme Court stated that the proceedings in the case were clearly within the type of procedures described in the Note to Rule 227.1(c)(2). Similarly, the Superior Court recently held in *Kramer v. Schaeffer*, 751 A.2d 241 (Pa.Super.2000), that no post-trial motions were required from a trial court's decision on a motion to enforce a settlement. Although the trial court conducted a lengthy evidentiary hearing in this case, the Court concludes that the proceedings were not the type from which post-trial motions are required. *Coco Brothers*; *Kramer*. Therefore, Edinboro's appeal shall not be quashed for failure to file post-trial motions.

■ Edinboro first contends that the parties never reached a meeting of the minds as to the material terms of the agreement and that the alleged settlement agreement lacks essential terms necessary for the existence of a valid contract.[1] Principles of contract law govern the enforceability of settlement agreements, and thus, as with any contract, the minds of the parties must meet upon all of the

---

1. A fact finder's resolution of conflicting evidence as to whether the parties intended for a writing to constitute a complete expression of their agreement will not be reversed on appeal unless the finding is unsupported by the evidence or unless the fact finder has clearly abused his or her discretion or committed an error of law. *Mazzella v. Kolken*, 559 Pa. 216, 739 A.2d 531 (1999).

material terms, as well as the subject matter, of the agreement in order for the settlement to be enforceable. *Mazzella v. Koken,* 559 Pa. 216, 739 A.2d 531 (1999). Furthermore, the agreed upon terms must provide a reasonably certain basis upon which the court can grant a proper remedy. *Miller v. Clay Township,* 124 Pa. Cmwlth. 252, 555 A.2d 972 (1989). Where ambiguities and undetermined matters render the agreement impossible to understand and enforce, the agreement must be set aside and the matter remanded for a trial on the merits. *Id.*

The mere fact that the parties reported to the court that they had reached a settlement agreement is not dispositive. That is amply demonstrated by the Supreme Court's decision in *Mazzella.* After many years of protracted litigation, the parties in *Mazzella* reached an agreement on general conditions of settlement; one party memorialized those conditions in a letter and both parties informed the Court during a settlement conference that they had negotiated a settlement. Although the parties were in agreement upon a framework for the settlement, a dispute arose concerning the distribution of assets after one party retained new counsel. The Supreme Court concluded that the dispute went to the essence of the parties' bargain and that the parties therefore did not reach an enforceable agreement.

This Court reached a similar result in *Miller.* The property owners in *Miller* brought an action against a township asserting that a recently constructed road encroached upon their property. The property owners mailed a letter to the township indicating that they were willing to accept its pre-trial offer to settle, and the trial court continued the matter for purposes of settlement. In a subsequent order, the court outlined the terms of the settlement and struck the matter from the trial list. However, the settlement terms left the placement of the roadway to be agreed upon by the parties at a future date, and the parties were unable to reach consensus on that term. This Court held that the parties had not reached an enforceable agreement because they had not agreed upon a material term of the agreement, i.e., the placement of the roadway.

All of the witnesses at the enforcement hearing agreed that Attorney Eidemueller did not state during the trial recess that Edinboro agreed to construct the retention basin to withstand a 100–year storm. Attorney Connor testified that a 100–year term was implicit because the discussions were held immediately following the testimony of Porreco's first witness and that this witness discussed a plan involving a retention basin which could withstand a 100–year storm. The record, however, reflects that Porreco's witness discussed multiple options for controlling storm water, at one point mentioning a 10–year storm standard for collection systems and at another time recommending a 100–year storm standard for a retention basin. This testimony cannot support the inference that Edinboro implicitly agreed to construct a basin meeting the 100–year storm standard. In fact, Attorney Eidemueller testified at the enforcement hearing that he was thinking of a retention basin that met the 10 or 20–year standard.

■ The record clearly indicates that the parties never reached an agreement as to placement of the retention basin and the standards by which it would be constructed. A retention basin with the capacity to withstand a 100–year storm is considerably different from a retention basin only capable of withstanding a 10 or 20–year storm. This term goes to the essence of the tentative settlement agreement and affects every aspect of it. The parties' failure to resolve this crucial term renders their tentative agreement impossible to interpret and/or to enforce. Thus the agreement must be set aside, and the matter remanded for completion of the trial on the mer-

its. *Miller.* Accordingly, the trial court's order is vacated.[2]

## *O R D E R*

AND NOW, this 13th day of September, 2000, the order of the Court of Common Pleas of Erie County is vacated, and the matter is remanded for completion of the trial on the merits.

Jurisdiction is relinquished.

2. In light of this result, the Court need not address Edinboro's alternative argument that the trial court's order changed the terms that the parties had negotiated. The Court also rejects Appellees' arguments that Edinboro should be required to construct a 100–year storm retention basin under theories of equitable or judicial estoppel. There is no evidence in the record that Edinboro intentionally or negligently misrepresented a material fact, and as discussed the record does not support a finding that Edinboro represented to the court or to any party that it would construct a retention basin meeting the 100–year storm standard. *See Chester Extended Care Center v. Department of Public Welfare,* 526 Pa. 350, 586 A.2d 379 (1991) (discussing equitable estoppel); *Ligon v. Middletown Area School Dist.,* 136 Pa.Cmwlth. 566, 584 A.2d 376 (1990) (discussing judicial estoppel). Furthermore, Appellees do not indicate where in the voluminous record of this case they presented these arguments to the trial court. *See* Pa. R.A.P. 302(a) (stating that issues raised for the first time on appeal are waived).